PRESENT: All the Justices

HOWARD WILSON ROSE, ET AL.

v.  Record No. 032014

ANNE-MARIE WESEN JAQUES

OPINION BY
JUSTICE G. STEVEN AGEE
June 10, 2004

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

In this personal injury case arising out of a motor vehicle accident, the appellants, Howard W. Rose and Stow Mills, Inc. (collectively, "Stow Mills"), assign multiple errors to the trial court's judgment confirming a jury award of $7.5 million to the appellee, Anne-Marie Wesen Jaques. Jaques asserts one assignment of cross-error regarding the trial court's granting leave to appeal under Code § 8.01-428(C).

I.  BACKGROUND AND PROCEEDINGS BELOW

On the night of December 29, 1996, Jaques was driving eastward in the far right lane on Interstate 64 near the Hampton Coliseum. To Jaques' right was a guardrail and no emergency stopping lane.

Rose was driving a tractor-trailer for his employer, Stow Mills, Inc., in the far left lane. Rose moved his tractor-trailer into the center lane behind Jaques' car in the right lane. A short time later, Rose's tractor and part of the trailer moved ahead of Jaques' car with the remainder of the trailer abreast of her car. Without signaling an intent to do

so, Rose moved the tractor-trailer into Jaques' lane of travel. The side of the rear wheels of the trailer collided with Jaques' vehicle and "bounced" it between the tractor-trailer and the guardrail several times before the car came to rest near an off-ramp where the guardrail ended. Rose later pled guilty in the City of Hampton General District Court to making an improper lane change.

Jaques filed a motion for judgment in the Circuit Court of the City of Hampton against Stow Mills for injuries Jaques claimed she received in the accident. At trial, the jury returned a verdict for Jaques in the amount of $7.5 million dollars and an order was entered by the trial court awarding that amount to Jaques. We awarded Stow Mills an appeal from the trial court's judgment on the assignments of error discussed below as well as Jaques' assignment of cross-error. For the reasons stated below, the judgment of the trial court will be affirmed.

## II. Analysis

### A. Jaques' Assignment of Cross-Error

Jaques' assignment of cross-error stems from a convoluted course of events concerning the date of the final order in this case. We begin our analysis here because if Jaques prevails on this issue, Stowe Mills' appeal is not timely and the trial court's judgment would be affirmed without further review.

2

On March 24, 2003, the jury returned its verdict for Jaques in the amount of $7.5 million. After the jury was dismissed, the following colloquy ensued between Stow Mills' counsel and the trial court:

> MR. PROTOGYROU: Judge, if we could, we would like to preserve our post-trial motions at this time and set a date in the future. . .
>
> THE COURT: . . . So if we don't hear anything from you in 21 days, Mr. Protogyrou, we will assume that no motion is to be made.

On April 11, 2003, within the 21-day period, Stow Mills moved for judgment non obstante veredicto, a new trial and remittitur. A hearing on these motions was scheduled for May 30, 2003.

Nothing further appears in the written record of the trial court before May 2, 2003. On that day, a Friday, counsel for Stow Mills received an envelope from the clerk of court, postmarked May 1, 2003, which contained a copy of a one-page order, signed by the trial court and dated March 24, 2003 (the "March 24th order"). This order recited the trial events of that date, including the verdict of the jury, and concluded with the following paragraph.

> It is therefore considered by the Court that the plaintiff, Ann-Marie Wesen Jaques, recover from the defendants, Howard Wilson Rose and Stow Mills, Inc., the sum of seven million five hundred thousand dollars, the damages by the jury in its verdict fixed, until paid, and her costs

3

by her about her prosecution in this behalf expended.  Entered this 24th day of March, 2003.

The March 24th order bears no date stamp or other indicia of receipt by the clerk of the court and bears no endorsements by counsel or reference to Rule 1:13.  While the March 24th order does not recite on its face that it is a final order, the parties do not contest that it is the trial court's final order by its terms.[1]

The following Tuesday, May 6, 2003, Stow Mills filed a motion requesting the entry of an order pursuant to Code § 8.01-428(C) preserving its right to appeal and requested a hearing prior to May 23, 2003, the sixtieth day after the March 24th order.  Stow Mills averred that the trial court was without jurisdiction to modify or suspend the March 24th order under Rule 1:1 and further contended that its right to appeal had expired under Rule 5:9 on April 23, 2003: all prior to any notification of the entry of the March 24th order.

The next day, May 7, 2003, the trial court wrote counsel for both parties stating, <u>inter</u> <u>alia</u>:

It is the intention of the court to protect all parties' right of appeal in this case and should I have made a mistake post trial, I will correct

---

[1] At the hearing on Stow Mills' Code § 8.01-428(C) motion, the trial court stated:  ". . . at the time I signed it was intended only to be a daily record of what had, in fact, occurred on March the 24th of 2003.  But in its form, as it was entered, [it] gives every appearance of being a final order in this matter."

that mistake.  The clerk further informs me that the trial orders in this case were actually entered on April 15, 2003.

On May 19, 2003, the trial court heard argument on Stow Mills' motion to which Jaques raised numerous objections. Jaques contended that since the trial court had represented the March 24th order was actually signed on April 15, 2003, Rule 1:1 required the later date be deemed the date of entry regardless of what the written order indicated on its face.[2]  Further, Jaques argued that the trial court had the authority to change the date on the March 24th order to April 15 as a clerical mistake cognizable under Code § 8.01-428(B).[3]

In the alternative, Jaques averred that Stow Mills did not meet the statutory criteria for relief under Code § 8.01-428(C) because: (1) Stow Mills had notice at least by the May 7th letter that the trial court "entered" the order on April 15th, so it then had until May 15th to file a notice of appeal, but affirmatively chose not to do so, (2) Stow Mills failed to

---

[2] Jaques cites the following part of Rule 1:1 as the basis of her position:  "The date of entry of any final judgment, order, or decree shall be the date the judgment, order or decree is signed by the judge."

[3] Code § 8.01-428(B) states in pertinent part:
  <u>Clerical</u> <u>mistakes</u>. – Clerical mistakes in all
  judgments or other parts of the record and errors
  therein arising from oversight or from an
  inadvertent omission may be corrected by the
  court at any time on its own initiative or upon
  the motion of any party and after such notice, as
  the court may order.

5

exercise due diligence to learn of the entry of the trial court's order before May 2nd, and (3) since Stow Mills had notice before May 15th of the entry of the order on April 15th, it had not been denied all opportunity to timely note an appeal.[4]

Jaques' counsel proffered to the court that he "was able to learn on April 15, through a telephone conversation with the clerk's office, that there was an order entered as of that date." The record does not disclose with whom Jaques' counsel spoke or the location of the order at that time. Jaques contends that Stow Mills should not be deemed to have exercised due diligence for purposes of Code § 8.01-428(C) if she was able to learn of the order's entry and Stow Mills failed to do so.

Stow Mills responded that the trial court was bound by the March 24th date because that date had not been altered pursuant to Rule 1:1 within 21 days. Further, Stow Mills argued that the trial court had no authority to change the date on the March

---

[4] Code § 8.01-428(C) states in its entirety:
> C. Failure to notify party or counsel of final order. — If counsel, or a party not represented by counsel, who is not in default in a circuit court is not notified by any means of the entry of a final order and the circuit court is satisfied that such lack of notice (i) did not result from a failure to exercise due diligence on the part of that party and (ii) denied that party an opportunity to file an appeal therefrom, the circuit court may, within sixty days of the entry of such order, grant the party leave to appeal. The computation of time for noting and perfecting an appeal shall run from the entry of such order, and such order shall have no other effect.

6

24th order to April 15, or any other date, because changing the date of a final order is not a "clerical error" cognizable under Code § 8.01-428(B), when the issue before the court involves lack of notice that affects a party's right to appeal. To hold otherwise, Stow Mills argued, would nullify Rule 1:1, ignore the General Assembly's intent as expressed in subsection C of Code § 8.01-428 and would lead to chaos in the judicial system. Stow Mills contended that its appeal rights had expired under the March 24th order on April 23rd, prior to any notice, and that relief was appropriate under Code § 8.01-428(C).

Stow Mills proffered that it had intermittently checked the trial court's web site and found no computer record reflecting that the March 24th order had been entered. Stow Mills' counsel also proffered, without contradiction, a representation from the deputy clerk of court who handled the March 24th order, that it had not been received in the clerk's office until "sometime . . . the week of April the 28th."

At the conclusion of the hearing, the trial court stated:

> I am satisfied that the lack of notice to counsel
> as to the entry of the order dated March 24th,
> 2003 did not result from a failure to exercise
> due diligence on the part of the defendant . . .
> and that the defendants were denied an
> opportunity to appeal.

The trial court then entered an order on May 19, 2003 (the "May 19th order"), granting the parties the right to file a

7

notice of appeal from the March 24th order pursuant to Code § 8.01-428(C). Stow Mills filed its notice of appeal the next day.

Since the General Assembly amended Code § 8.01-428 in 1993 to add subsection C, we have not had occasion to address its application.[5] The Court of Appeals of Virginia did review this subsection in Zhou v. Zhou, 38 Va. App. 126, 562 S.E.2d 336 (2002), examining the interplay between subsections B and C, and concluded: "the authority and procedure to extend the filing deadline, where lack of notice is the issue, is provided only under Subsection C." Id. at 136, 562 S.E.2d at 339.

It is not necessary in the present appeal to resolve the question whether there may be instances where the date of an order may be corrected under Code § 8.01-428(B). Since the trial court speaks only through its written orders, McMillion v. Dryvit Sys., Inc., 262 Va. 463, 469, 552 S.E.2d 364, 367 (2001), and – on its face – the order Stow Mills received on May 2 indicated entry on March 24th, the issue in this case is lack of notice of the entry of a final order and the consequent expiration of a party's appeal rights.

_____

[5] Although this Court does have cases addressing Code § 8.01-428(C), those cases concern the version of the statute in effect prior to the 1993 amendment. Former Code § 8.01-428(C) concerning independent actions to relieve a party from judgment is now Code § 8.01-482(D).

8

Whether the trial court might also have proceeded under subsection B of Code § 8.01-428 in the present circumstance is not dispositive. By specific legislative act the General Assembly has authorized trial courts to remedy lack of notice for the filing of an appeal through subsection C of Code § 8.01-428.

Because Stow Mills chose to proceed under Code § 8.01-428(C) and the trial court has the authority to afford relief under that subsection, our inquiry is whether the trial court made the necessary findings under the statute and whether those findings are supported by the record. A trial court may enter an order under Code § 8.01-428(C) extending a party's time to notice an appeal if that party received no notification, by any means, of the entry of a final order and the circuit court

> is satisfied that such lack of notice (i) did not result from a failure to exercise due diligence on the part of that party and (ii) denied that party an opportunity to file an appeal therefrom . . . .

Code § 8.01-428(C).

The trial court made the following findings in its May 19th order:

> 1. The Court's Order of March 24, 2003, was entered without notice to counsel for Defendants and without notice to the Defendants themselves,
>
> 2. The lack of notice was not a result of the failure of counsel to exercise due diligence,

9

> 3. The lack of notice denied Defendants an opportunity to file an appeal from the March 24, 2003, order . . . .

The trial court thus made the findings required by the statute, and based on the record before us, we cannot say the trial court's determinations were plainly wrong or without supporting evidence. Nothing in the record indicates that Stow Mills had notice of the March 24th order prior to May 2nd. Thus, Stow Mills' time for noting an appeal under Rule 5:9 had expired under the March 24th order on April 23rd, absent relief under Code § 8.01-428(C).

The record also supports the finding that the lack of notice of the March 24th order was not the result of a failure to exercise due diligence by Stow Mills. While Jaques makes much of the proffer by its counsel that he learned the order had been entered on April 15, nothing in the record indicates that anyone could have determined from the court's file that the order had been entered until sometime the week of April 28th, if then. Indeed, nothing in the record indicates any person could have determined from the court's file the order had been entered prior to its receipt by Stow Mills on May 2nd. Neither the March 24th order nor any other entry in the record supports the supposition that the court's file contained the order prior to

10

May 2nd.[6]  If the court's file does not contain the order,

counsel cannot be deemed to have failed to exercise due

diligence when discovery of that order was not available to the

public.

As Stow Mills did not receive timely notice of the March

24th order and that lack of notice was not the result of its

failure to exercise due diligence, it is self-evident that the

lack of notice denied Stow Mills an opportunity to file a timely

appeal because the period within which to do so expired prior to

receipt of the March 24th order on May 2nd.  Accordingly, we

find no error in the trial court's order of May 19th and

conclude the filing of Stow Mills' notice of appeal on May 20,

2003, was timely.  Jaques' assignment of cross-error will

therefore be denied.

### B.  Contributory Negligence

At the close of its case, Stow Mills moved to strike the

plaintiff's evidence on the basis that Jaques was contributorily

negligent as a matter of law for failing to keep a proper

---

[6] Stow Mills contends that it was entitled to rely on its colloquy with the trial court after return of the jury's verdict which it interprets to mean the trial court would not enter a final order until it had ruled on Stow Mills' post-trial motions.  We need not speculate on the legal effect, if any, the dialogue between the trial court and a party may have in the absence of the entry of an order suspending judgment within the appropriate 21-day period of Rule 1:1.  Nonetheless, the trial court's discussion with counsel is a factor, among others, the trial court could consider in its overall determination of whether Stow Mills exercised due diligence.

11

lookout.  Stow Mills argued to the trial court that Jaques'

failure to see the tractor-trailer moving into her lane and to

brake or take other evasive action constituted contributory

negligence.  The trial court rejected Stow Mills' request for a

jury instruction on contributory negligence and denied Stow

Mills' motion to strike holding that, as a matter of law, Jaques

was not contributorily negligent.

On appeal, Stow Mills asserts that it was error for the

trial court: (1) "to hold, as a matter of law, that [Jaques] was

free from contributory negligence," (2) "to fail to hold that

[Jaques] was contributorily negligent as a matter of law," and

(3) "to refuse to instruct the jury on contributory negligence."[7]

Contributory negligence involves an objective test, "i.e.,

whether a plaintiff failed to act as a reasonable person would

have acted for his own safety under the circumstances."  Artrip

v. E.E. Berry Equip. Co., 240 Va. 354, 358, 397 S.E.2d 821, 823–

24 (1990).  "Whether a plaintiff is guilty of contributory

negligence is generally a question of fact to be decided by the

---

[7] On appeal, Jaques argues that Rule 5:11(b) bars Stow
Mills' assignments of error pertaining to contributory
negligence because Stow Mills failed to file all portions of the
transcript necessary for adjudication of those issues on appeal.
However, Jaques made no objection to the transcript in the trial
court as required by Rule 5:11(d).  Thus, this objection is
waived on appeal.  Rule 5:25.  Moreover, Jaques filed a full
transcript, which leaves this Court with a complete record on
appeal.  Stow Mills' motion for costs incurred in reproducing
"non-germane" portions of the appendix will be denied.

trier of fact." Sawyer v. Comerci, 264 Va. 68, 74, 563 S.E.2d 748, 752 (2002); Artrip, 240 Va. at 358, 397 S.E.2d at 823. A defendant asserting contributory negligence as a defense bears the burden of proving, by the greater weight of the evidence, that the plaintiff was negligent and that her negligence was the proximate cause of the injury. Karim v. Grover, 235 Va. 550, 552, 369 S.E.2d 185, 186 (1988). This means "the burden is upon the defendant to establish by a preponderance of the evidence such contributory negligence, unless it is disclosed by the plaintiff's evidence or can be fairly inferred from the circumstances of the case." Sawyer, 264 Va. at 75, 563 S.E.2d at 752 (quoting Southern Railway v. May, 147 Va. 542, 552, 137 S.E. 493, 496 (1927)).

We first address Stow Mills' assignment of error on refusal of the jury instruction because it presents the least evidentiary burden. Stow Mills' failure to meet that burden would vitiate any need to address the other two assignments of error.

As the proponent of a rejected jury instruction on contributory negligence, we will view the evidence in the light most favorable to the defendant, Stow Mills. Commonwealth v. Vaughn, 263 Va. 31, 33, 557 S.E.2d 220, 221 (2002) ("When reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to

13

the proponent of the instruction"); Doe v. Dewhirst, 240 Va. 266, 268, 396 S.E.2d 840, 842 (1990). However, "more than a scintilla of evidence is necessary to establish each of the elements of contributory negligence before such instruction may be given to a jury." Sawyer, 264 Va. at 75, 563 S.E.2d at 753; see also Gravitt v. Ward, 258 Va. 330, 335, 518 S.E.2d 631, 634 (1999); Ring v. Poelman, 240 Va. 323, 327, 397 S.E.2d 824, 827 (1990). The prima facie case is demonstrated when there is more than a scintilla of evidence produced on each of the elements of contributory negligence. The record in this case does not contain that threshold level of evidence on any of these elements and, therefore, Stow Mills was not entitled to a jury instruction.

On direct examination, Rose admitted that at the time he moved the tractor-trailer into the right lane, he did not see Jaques' vehicle. Tommy Meade ("Meade"), who was driving behind both Rose and Jaques on the interstate at the time of the accident, witnessed the collision between Rose's tractor-trailer and Jaques' vehicle. He testified that, just prior to the accident, Jaques was driving in the right lane and Rose was driving in the left lane. According to Meade's testimony, he observed Rose move into the center lane and then, approximately five seconds later, move into the right lane striking Jaques' vehicle. The tractor-trailer then bounced Jaques' car between

14

the trailer and the guardrail "four to five times . . . and there came a point where the tractor trailer got off of her, and that was at a off-ramp where the guardrail had ended."  Meade also testified that he did not observe anything in the operation of Jaques' vehicle that would have caused her to strike the tractor-trailer and that based on his observations, there is no way Jaques could have avoided the accident.

Brian S. Vance ("Vance"), Jaques' boyfriend at the time of the accident, was in the passenger seat when the accident occurred.  He testified that the tractor-trailer "drug the car, I would think close to a hundred yards" along the guardrail.  He stated that Jaques' vehicle was traveling approximately 55 miles per hour when the tractor-trailer struck them.

Stow Mills read into the record portions of Jaques' deposition testimony.  In that testimony, Jaques stated that she was driving 55 miles per hour in the right lane.  She testified that just prior to the collision she had checked her left side and there were no vehicles in that lane.  It was only when Vance screamed that she "saw a truck coming at me.  His cab, the side of his cab and the lights along the side of the truck, the reflector lights."  She testified, through her deposition testimony, that after the tractor-trailer hit her vehicle,

> we were going back and forth between the
> guardrail and the truck itself . . . I tried to
> hit my horn, and I couldn't because the air bag

had deployed . . . you know, it was just a moment that I was trying to do something to show that I was there, and there was nothing I could do.

Stow Mills contends on appeal that Jaques was contributorily negligent for failing to see the tractor-trailer and not taking measures to avoid the collision. It argues that

Jaques had no explanation for failing to see an eighteen-wheeler as the large truck came up on her side of the car, moved past her, and then moved into her lane. Nor did she explain why she did not apply her brakes and let the truck pass given that she saw the truck before it hit her car. Moreover, she never explained how it was that her passenger – who was farthest from the truck – saw the truck before she did, gave her a warning before the truck hit her, and yet she took no steps to avoid the collision.

The record does not support Stow Mills' allegation that Jaques failed to apply her brakes so as to avoid the collision; there was simply no testimony on that point. Meade, the witness in the best position to see the events unfold, testified that from what he observed, Jaques could not have avoided the collision. She was in her lane of travel and not traveling at an excessive speed. The driver of the truck testified that he did not see her before attempting to enter her lane. There is nothing in the record to indicate that Jaques failed to act as a reasonable person would have acted under the circumstances. A jury finding that Jaques was negligent would have required unreasonable speculation beyond the evidence presented at trial. The trial court properly held that Jaques was not contributorily

16

negligent as a matter of law and precluded Stow Mills from asserting that defense to the jury.

C.   Questioning of Witness by the Trial Court

Dr. Anuradha Daytner ("Dr. Daytner"), one of Jaques' treating physicians, testified at trial regarding the medical care Jaques received.  Jaques' counsel asked Dr. Daytner if, during treatment, she assessed with a reasonable degree of medical certainty whether Jaques was being truthful and honest. Stow Mills objected, arguing that Dr. Daytner could not testify as to truthfulness, as that was an impermissible assessment of character.  After several attempts to rephrase the question and further objections from Stow Mills, the trial court, on its own initiative, questioned Dr. Daytner in the following exchange:

THE COURT:     Doctor, one of the things you have to do with any
               patient is to determine whether or not you are
               getting accurate information, correct?
[DR. DAYTNER]: Correct.
THE COURT:     Did you make such determination with [Jaques]?
[DR. DAYTNER]: Yes.
THE COURT:     Did you find the information that she gave you to
               be credible?
[DR. DAYTNER]: Yes.
THE COURT:     Need anything else, [Jaques' counsel]?
[DR. DAYTNER]: No, Your Honor.  Thank you.

Stow Mills asserts on appeal that the trial court showed bias by the act of questioning Dr. Daytner.

Although Stow Mills objected to the questioning of Dr. Daytner by Jaques' counsel on the basis that it called for impermissible testimony regarding the plaintiff's capability for

17

veracity, no objection was made to the questioning of the witness by the trial court. Stow Mills did not alert the trial court that it contended the court's questioning showed bias. Rule 5:25 requires that objections be "stated with reasonable certainty at the time of the ruling." Rule 5:25; Flippo v. CSC Assocs. III, L.L.C., 262 Va. 48, 61, 547 S.E.2d 216, 224 (2001). We will not consider an objection raised for the first time on appeal as Stow Mills does here. Buck v. Jordan, 256 Va. 535, 545-46, 508 S.E.2d 880, 885-86 (1998).

### D. Damages for Deposition-Related Stress

Stow Mills' next assignment of error asserts that Jaques sought to recover damages for stress allegedly caused by the litigation she initiated against Stow Mills. In particular, Stow Mills alleges that Jaques sought damages related to symptoms caused by having to give deposition testimony during the pendency of the litigation. Stow Mills avers such a "damage-by-litigation" claim is not cognizable in law.

Although Jaques' pleadings never mention a purported "damage-by-litigation" claim, Stow Mills construes several instances in the record where her deposition is mentioned as an attempt to recover for damages arising out of the litigation. For example, during closing argument, Jaques' counsel stated that "[s]he fought to overcome all of the disabilities until she crashed and burned after these depositions." In addition,

Jaques' psychologist testified as follows about her reaction to the May 2002 deposition:

[PSYCHOLOGIST]:       Well, she came in – I was saying, I was going to go outside, and she just looked at me, and when she looked at me[,] her eyes – and I've never seen her like that – were just full of tears, and I said do you need to go inside and she said yes.  Her posttraumatic stress disorder symptoms were just flagrant. She discussed her deposition issues.  Crying about things that were said, things that were implied, the events that occurred.

                                           . . . .

[JAQUES' COUNSEL]:    Doctor, from a purely clinical perspective with a reasonable degree of psychological certainty, what is your opinion with respect to the effect of the deposition, having to relive the wreck at the deposition, had on her condition and as it exists today?

[PSYCHOLOGIST]:       I think it exacerbated her PTSD symptoms to a full-blown posttraumatic stress disorder diagnosis that she will never be able to get rid of.

An examination of the record shows that Stow Mills did not object to any of the testimony from Jaques' witnesses relating to Post-Traumatic Stress Disorder ("PTSD") stemming from the deposition.  Any such argument on appeal is thus barred by Rule 5:25.

          E.  Exclusion of Expert Testimony on Malingering

     Stow Mills retained a neuropsychologist, Dr. Edward A. Peck, to conduct an independent medical examination, including a

19

psychological test for malingering,[8] on Jaques. Dr. Peck proffered testimony outside the presence of the jury about his testing of Jaques. At the conclusion of that proffer the trial court excluded all of his testimony regarding malingering. Stow Mills assigns error to the trial court's exclusion of Dr. Peck's testimony.

"A trial court's exercise of its discretion in determining whether to admit or exclude evidence will not be overturned on appeal absent evidence that the trial court abused that discretion." Wright v. Kaye, 267 Va. 510, 517, 593 S.E.2d 307, 310 (2004) (quoting May v. Caruso, 264 Va. 358, 362, 568 S.E.2d 690, 692 (2002)). This Court will not consider testimony excluded by the trial court "without a proper showing of what that testimony might have been." O'Dell v. Commonwealth, 234 Va. 672, 697, 364 S.E.2d 491, 505 (1988). "When testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer." Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977).

---

[8] Malinger means "to pretend to be ill or otherwise physically or mentally incapacitated so as to avoid duty or work," or "to deliberately induce, protract, or exaggerate actual illness or other incapacity so as to avoid duty or work." Webster's Third New International Dictionary 1367 (1993).

The record contains a transcript of Dr. Peck's testimony given outside the presence of the jury. During that testimony, the following exchange between the court and Dr. Peck occurred:

THE COURT:      Okay. And your diagnosis [–] are the three diagnoses there on page 12 [of the report]?
[DR. PECK]:     That's correct.
THE COURT:      That's really the bottom line of your assessment?
[DR. PECK]:     That would be correct.

Following Dr. Peck's proffer and the arguments of counsel, the trial court stated: "[a]bout malingering, I'm not going to allow the issue of malingering to be discussed. What [Dr. Peck] basically said [was] he doesn't know whether there's sufficient evidence for a formal diagnosis of malingering."

The trial court had the opportunity to hear Dr. Peck's testimony and view his independent medical examination report, including the diagnoses. The report does not appear in the record. The only portion of Dr. Peck's report relevant to malingering and available in the record is found excerpted in a pleading Jaques submitted to the circuit court where he stated his concerns "are <u>not</u> sufficient to a degree where a formal diagnosis of malingering can be offered." If Dr. Peck did, as Stow Mills asserts, conclude in his independent medical examination report that Jaques was malingering, Stow Mills has failed to present this Court with a properly preserved record. There is thus no evidence that the trial court abused its

21

discretion by excluding Dr. Peck's testimony concerning malingering.

### F.   Exclusion of Surveillance Videos

In an attempt to impeach testimony from Jaques' witnesses that injuries from the accident had severely limited her daily activities, Stow Mills made videotape recordings, while the trial was ongoing, of Jaques performing various activities outside the courtroom.[9]  Stow Mills sought to introduce the videotapes into evidence.  The trial court denied Stow Mills' request.  On appeal, Stow Mills asserts that "[i]t was error for the trial court to exclude surveillance videos, taken at the very time the trial was underway, which graphically depicted [Jaques] engaged in activities that her witnesses were telling the jury she could not engage in."

The admission of photographic evidence rests within the sound discretion of the trial court.  Bailey v. Commonwealth, 259 Va. 723, 738, 529 S.E.2d 570, 579 (2000).  However, as we previously noted, "[w]hen testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer."  Whittaker, 217 Va. at 968, 234 S.E.2d at 81 (citing Jackson v. Commonwealth, 98 Va. 845, 846-47, 36 S.E. 487, 488 (1900)).  The record on appeal

---

[9] Except for the day she testified, Jaques did not attend the trial.

22

consists of "each exhibit offered in evidence, whether admitted or not, and initialed by the trial judge." Rule 5:10(a)(3).

After the trial court granted Jaques' motion to exclude the surveillance videotape, Stow Mills' counsel requested "that a set [of the videotapes] be filed with the record at some point during this trial as proffered evidence as to what would have been put before the Court." No such filing appears in the record. The appellant is charged with presenting a proper record on appeal sufficient for this Court to review the error assigned. Phillips v. Orlins, 208 Va. 615, 617, 159 S.E.2d 667, 669 (1968). Stow Mills having failed in this duty, the issue cannot properly be considered on appeal.

## G. Exclusion of Employment Records

At trial Stow Mills sought to introduce employment records from Jaques' employer, USAA. Specifically, Stow Mills wished to introduce Jaques' employment application and performance evaluations from 1999, 2000, and 2001, to rebut Jaques' testimony of "what she did at USAA, how it affected her, [and] how she couldn't do certain things." Stow Mills argued to the trial court that the performance evaluations "deal with a lot of what [Jaques] said and how well she did at these things and how she passed certain courses and got certain CLE-type credits in insurance."

Marva A. Smith ("Smith"), USAA's executive director of human resources for the mid-Atlantic region, testified outside the presence of the jury that the records were kept in the normal course of business within USAA's human resources system. She testified that the documents were copies of originals kept by USAA. Smith also testified, on cross-examination, that the actual custodian of the records was a corporate representative in another state though she was personally responsible for the custody of the files in Virginia. She stated that she did not personally witness and could not describe the steps taken to collect the files Stow Mills sought to introduce because that was done by personnel at USAA's corporate headquarters in Texas. After extensive examination of Smith by both parties, the trial court ruled the documents were not admissible because "there were sufficient gaps in [her] testimony that places in question some reliability of these documents." Stow Mills assigns error to that ruling.

Assuming, without deciding, that the records at issue should have been admitted, any error in excluding that evidence was harmless. A review of the record demonstrates there was testimony from a rehabilitation counselor regarding Jaques' salary during the course of her employment. One of Jaques' former employers testified about her licensing in the insurance business, her salary, and her continuing education in the

insurance field.  Jaques' husband testified about her employment and Jaques herself, via her deposition testimony, testified about her graduation from college.  There was ample evidence before the jury that after her accident Jaques had graduated from college, been employed, earned licenses, and received salary increases: all items Stow Mills asserted the USAA records would prove.  The trial court's exclusion of the USAA records was thus harmless error, if error at all.

H.  Unicare and Dr. O'Shanick

Stow Mills also assigned error to two rulings of the trial court which are of limited substance.  During the cross-examination of a defense expert regarding his IRS 1099 tax forms, Jaques' counsel asked the doctor if "Unicare" was a plaintiff.  Because Unicare could be an insurance company, Stow Mills moved for a mistrial.  The trial court admonished Jaques' counsel but denied the motion for a mistrial.  Stow Mills assigns error to that ruling.

In saying "Unicare" Jaques' counsel did not mention insurance.  There is nothing in the record to suggest that the jury was aware that Unicare was an insurer, if indeed it is.  Under such circumstances it cannot be said the appellants were prejudiced and the trial court did not abuse its discretion in denying Stow Mills' motion for a mistrial.

25

Another assignment of error concerned the testimony of Dr. Gregory J. O'Shanick, one of Jaques' expert witnesses, which included sensitive financial data.  The trial court sealed that portion of Dr. O'Shanick's testimony and Stow Mills assigns error.  However, no objection to sealing the testimony was made at trial and it will not be considered on appeal.  Rule 5:25.

## I.  Improper Closing Argument

### 1.  Statements by Counsel

Stow Mills alleges on appeal that Jaques' counsel made several improper and prejudicial statements during closing argument to the jury.  While making his closing argument, Jaques' counsel stated, "if you look at it, this is the undisputed evidence.  The trucking company was at fault.  [Jaques] wasn't.  She will have – they do not dispute this, and I'll tell you about this."  Stow Mills objected and the trial court responded "I believe they do dispute that."  However, Stow Mills failed to ask the trial court for a ruling on its objection and did not ask for a curative instruction or mistrial.  It cannot now raise an objection it failed to perfect in the trial court.  Rule 5:25.

Stow Mills next complains that Jaques made two improper "Golden Rule" arguments to the jury.  In the first instance Jaques' counsel asked the jury to "imagine one day to wake up and look in that mirror and think you're looking at the same

person, and think that — what's wrong with these people around me? Why are they acting bad? Because that's the tragedy of the person." Stow Mills did not object to this statement and our review is thus barred by Rule 5:25.

The second allegedly impermissible "Golden Rule" argument occurred during Jaques' rebuttal when counsel stated, "I just want you to imagine what she goes through every day of her life, and imagine what you can do." In response to Stow Mills' objection the trial court acknowledged "[t]hat's probably over the line" but did not explicitly sustain the objection. Again, Stow Mills failed to ask the trial court for a ruling and did not request a curative instruction or move for a mistrial. Rule 5:25 thus bars our consideration of this claim.[10]

## 2. Altered Exhibit

Stow Mills sought to preclude Jaques' counsel from using an exhibit during his closing argument which, in an itemized fashion, correlated the damages suffered to the jury instructions. At the time the trial court approved the use of the exhibit, there were no dollar amounts written on the

---

[10] We note that neither of these instances were "Golden Rule" arguments as that doctrine is typically expressed. Neither argument specifically asked the jurors to put themselves "in the plaintiff's shoes." Cf. Velocity Express Mid-Atlantic v. Hugen, 266 Va. 188, 197-203, 585 S.E.2d 557, 562-66 (2003); Seymour v. Richardson, 194 Va. 709, 715, 75 S.E.2d 77, 81 (1953). Furthermore, Jaques' counsel did not "persist[] in such argument after the admonition of the court," as was the case in Velocity Express. 266 Va. at 202, 585 S.E.2d at 565.

exhibit.  However, when Jaques' counsel prepared to use the exhibit during his closing argument, numbers had been filled in. Stow Mills objected and the trial court stated that "[t]hose numbers weren't on there [when the exhibit was approved] so you're not going to use it."

Stow Mills could not have been prejudiced by the exhibit because the trial court sustained their objection and prevented Jaques' counsel from using it.  There is no evidence in the record that the exhibit was shown to the jury or that any juror ever saw it.  Therefore, there can be no error.  Moreover, Stow Mills did not request a curative instruction or move for a mistrial.

### J.  Excessive Verdict

Stow Mills' final assignment of error challenges the verdict on the basis that it is "excessive."  "Setting aside a verdict as excessive . . . is an exercise of the inherent discretion of the trial court and, on appeal, the standard of review is whether the trial court abused its discretion." Poulston v. Rock, 251 Va. 254, 258-59, 467 S.E.2d 479, 482 (1996).  The thrust of Stow Mills' argument is that the jury's verdict is excessive when compared to other PTSD cases, statewide and nationally.  However, aside from language in P. Lorillard Co. v. Clay, 127 Va. 734, 104 S.E. 384 (1920), Stow Mills cites no other case where this Court has sanctioned a

verdict comparison analysis as the measure of a verdict's excessiveness. Instead, Stow Mills correctly cites the test set out in Shepard v. Capitol Foundry of Va., Inc., 262 Va. 715, 554 S.E.2d 72 (2001), as the appropriate measure:

> When a verdict is challenged on the basis of alleged excessiveness, a trial court is compelled to set it aside "if the amount awarded is so great as to shock the conscience of the court and to create the impression that the jury has been motivated by passion, corruption or prejudice, or has misconceived or misconstrued the facts or the law, or if the award is so out of proportion to the injuries suffered as to suggest that it is not the product of a fair and impartial decision."

Id. at 720-21, 554 S.E.2d at 75 (quoting Edmiston v. Kupsenel, 205 Va. 198, 202, 135 S.E.2d 777, 780 (1964)). We find nothing in the record, as addressed above concerning Stow Mills' other assignments of error, to suggest the verdict was the product of "passion, corruption or prejudice," or that the jury "misconceived or misconstrued the facts or the law." Id.

The amount of the verdict was supported by credible evidence in the record. Jaques' life care expert, Dr. Robert Voogt, projected the cost of her future care would exceed $5 million. Jaques introduced evidence that her medical expenses exceeded $77,000. A vocational rehabilitation expert testified that Jaques' lost earnings would amount to $2,050,000. There is thus credible evidence in the record to support the verdict and, based on the analysis in Shepard, we cannot say from the

29

evidence of damages presented at trial that the trial court abused its discretion or that the "award is so out of proportion to the injuries suffered as to suggest that it is not the product of a fair and impartial decision."  Id. at 721, 554 S.E.2d at 75.  For these reasons, Stow Mills' request for remittitur will also be denied.

III.  CONCLUSION

For the reasons stated herein, the judgment of the trial court will be affirmed.

Affirmed.