COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys,* Friedman and White
Argued at Christiansburg, Virginia

UNPUBLISHED

DIANNA DRANE

v.     Record No. 1595-22-3

JESSICA PANTANA

MEMORANDUM OPINION** BY
JUDGE KIMBERLEY SLAYTON WHITE
FEBRUARY 27, 2024

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

Hannah Bowie (Brandon S. Osterbind; Kelly A. Osterbind;
Osterbind Law, PLLC, on briefs), for appellant.

William E. Phillips (Pavlina B. Dirom; Caskie & Frost, P.C. on
brief), for appellee.

Dianna Drane filed a personal injury lawsuit against Jessica Pantana in Lynchburg Circuit

Court. After a two-day trial, the jury returned a verdict for Pantana. On appeal, Drane argues that

the circuit court erred in permitting Pantana to assert a contributory negligence defense, refusing

several of Drane's jury instructions, allowing defense counsel to refer to Pantana as his "client,"

overruling Drane's objections to a defense expert's testimony, and denying Drane's motion to set

aside the verdict without a hearing. Finding no error, we affirm the judgment of the circuit court.

BACKGROUND

On November 17, 2017, Dianna Drane was traveling on Williams Stadium Road,

approaching the intersection with Regents Parkway. She estimated her speed to be about 30

---

* Judge Humphreys participated in the hearing and decision of this case prior to the
effective date of his retirement on December 31, 2023.

** This opinion is not designated for publication. See Code § 17.1-413(A).

miles per hour in the 25 mile-per-hour speed zone. When she entered the intersection controlled by a traffic light, her lane of travel had a green light. She observed no other vehicles as she approached and entered the intersection. Jessica Pantana was approaching the intersection from the opposite side of Williams Stadium Road. When she arrived at the intersection, she turned left to travel onto Regents Parkway. Pantana's vehicle was struck in the front corner by the front of Drane's vehicle.

At trial, Drane introduced photographs of the intersection, of her clear line of sight, and of the two cars in the intersection following the collision for the jury's consideration. On cross-examination, Drane agreed that nothing obstructed her front-facing view and that the sun was behind her as she drove through the intersection. Drane did not know why she did not see Pantana's vehicle prior to impact. Drane also testified that she did not know the accident was about to happen as she approached the intersection, but she was familiar with the area where the accident occurred, admitting that she drove through there about two or three times a week.

As an adverse witness called in Drane's case-in-chief, Pantana stated that she approached the intersection traveling the opposite direction on Williams Stadium Road, intending to turn left onto Regents Parkway. The intersection light had a sign indicating that vehicles turning left on green lights must yield to oncoming traffic. Pantana testified to having a solid green light. When Pantana began her left turn, her passenger yelled her name and Pantana attempted to brake. Pantana agreed that she had no facts to show Drane or any other person caused or contributed to the collision. At the same time, Pantana testified that the sun was directly in front of her and that she believed it obstructed her vision of Drane's on-coming vehicle.

Drane brought a personal injury lawsuit against Pantana for the vehicle collision. Pantana denied liability and damages and alleged a contributory negligence defense. Drane also served State Farm Mutual Automobile Insurance Company as the underinsured motorist

insurance carrier under Code § 38.2-2206. State Farm's answer also denied liability, damages, and asserted that "should the evidence produced at trial or during discovery of this matter so support it, it will rely upon the affirmative defense of the plaintiff's contributory negligence." Pantana's insurer, USAA General Indemnity Company, tendered Pantana's available tort policy limit of $25,000 and released Pantana from any further liability under Code § 38.2-2206.

In Pantana's answer to discovery, when asked if anyone other than herself caused or contributed to the collision, Pantana answered "No." Pantana also indicated that she was unaware of any specific facts to support a contributory negligence defense. State Farm answered a similar discovery question indicating that it was unaware of any evidence or facts supporting a contributory negligence defense while still reserving "the right to supplement or amend [their] Answer as discovery progress[ed]." Before the jury trial started, defense counsel for State Farm requested to refer to Pantana as his "client" under Code § 38.2-2206(K). Drane objected on the grounds that it misrepresented to the jury the nature of their relationship. The trial court found that the statute unambiguously permitted defense counsel's request and overruled Drane.

At trial, Dr. Scott Bender, an associate professor of psychiatry and neuro-behavioral science at the University of Virginia who was hired by State Farm to do neuropsychological tests on Drane, was permitted to testify as an expert in neuropsychology without objection. Dr. Bender testified to the results of tests and to whether the crash caused Drane to suffer a concussion. Although overruled, Drane did object to Dr. Bender's testimony relating to the causation of any concussion suffered by Drane on the grounds that Dr. Bender was not "qualified to give that kind of opinion."

Pantana requested jury instructions regarding contributory negligence, and Drane objected, arguing that Pantana's own testimony precluded that finding. The trial judge determined that the evidence about speed, the position of the sun, and whether Drane had

sufficient time and opportunity to avoid the collision established contributory negligence as an issue that was proper for the jury to decide. The trial court stated it would instruct the jury to determine: 1) if the defendant was negligent; 2) if so, whether the defendant's negligence proximately caused the collision; 3) if the plaintiff was negligent; 4) if so, whether the plaintiff's negligence proximately caused the collision; and 5) the plaintiff's damages, if she was entitled to recover. The finding instruction charged the jury to rule for the plaintiff if she proved by the greater weight of the evidence that the defendant was negligent and that such negligence proximately caused the collision. Otherwise, the jury should rule for the defendant if the plaintiff failed to prove those elements or that the greater weight of the evidence established the plaintiff's contributory negligence was a proximate cause of the collision.

Drane requested that the jury be instructed that when a vehicle approaches an intersection controlled by a "yield right-of-way sign," the driver must slow, stop, or potentially yield to any lawfully approaching vehicle. Drane argued that the instruction was appropriate because of the sign on the light indicating that left turns must yield on green. Pantana offered an instruction that a driver approaching a solid green light "shall move in the direction of the signal," but must yield to vehicles lawfully within the intersection. The trial court found that Pantana's "green light" instruction was more appropriate.

The trial court gave to the jury, in written form, the instructions outlined above, but did not read the finding instruction, although it is marked on its face as "GIVEN." Neither party objected nor otherwise raised this issue with the trial court before proceeding with closing arguments. In Drane's closing argument, however, counsel repeated the finding instruction, giving the jury an audible and written version of the instruction. The jury returned a verdict for Pantana.

Drane moved to set aside the verdict, arguing that the evidence at trial did not support a finding of contributory negligence. Drane's motion was denied without a hearing, and a final order was entered on September 27, 2022, dismissing the case with prejudice. The trial court found that "[m]ore than a scintilla of evidence was produced concerning contributory negligence," including "testimony that [Drane] was traveling above the posted speed limit and that [Drane] did not see [Pantana's] car prior to the accident."

Drane filed another motion to reconsider, arguing that she was entitled to a hearing on the merits of her prior motion according to Rule 4:15(d) and rearguing the issues in her prior motion. The trial court issued an opinion letter on October 18, 2022, and later an order on February 6, 2023, denying the motion to reconsider "for the reasons previously articulated in the Court's Letter Opinion" denying Drane's motion to set aside the verdict and "for the reasons stated on the record."

ANALYSIS

"It is well-settled that 'a party who comes before us with a jury verdict approved by the circuit court 'occupies the most favored position known to the law.'" *N. Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 622 (2021) (quoting *Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 57 (1992)). "As a general rule, [w]e will not set aside a [circuit] court's judgment sustaining a jury verdict unless it is 'plainly wrong or without evidence to support it.'" *Id.* (alterations in original) (quoting *Parson v. Miller*, 296 Va. 509, 523-24 (2018)).

I. Contributory Negligence

Drane argues that the trial court erred in allowing counsel for the underinsured motorist carrier to rely on a defense of contributory negligence when the basis for such defense was not disclosed to Drane in discovery when requested and where no evidence supported the defense. We disagree.

- 5 -

"Contributory negligence is an affirmative defense that must be proved according to an objective standard whether the plaintiff failed to act as a reasonable person would have acted for his own safety under the circumstances. The essential concept of contributory negligence is carelessness." *RGR, LLC v. Settle*, 288 Va. 260, 283 (2014) (quoting *Jenkins v. Pyles*, 269 Va. 383, 388 (2005)). "[T]he burden is upon the defendant to establish by a preponderance of the evidence such contributory negligence, unless it is disclosed by the plaintiff's evidence or can be fairly inferred from the circumstances of the case." *Rose v. Jaques*, 268 Va. 137, 149-50 (2004) (quoting *Sawyer v. Comerci*, 264 Va. 68, 75 (2002)). If a defendant relies on the defense, they "must establish a prima facie case of the plaintiff's contributory negligence." *Settle*, 288 Va. at 284 (quoting *Sawyer*, 264 Va. at 75). A "prima facie case is demonstrated when there is more than a scintilla of evidence produced on each of the elements of contributory negligence." *Rose*, 268 Va. at 150. "To do so, a defendant must show that the plaintiff was negligent and that such negligence was a proximate cause of the accident." *Settle*, 288 Va. at 284. "These are questions of fact to be decided by the factfinder unless 'reasonable minds could not differ about what conclusion could be drawn from the evidence.'" *Id.* (quoting *Jenkins*, 269 Va. at 388-89).

While contributory negligence is a question of fact for the jury, before a contributory negligence instruction may be submitted to a jury, a defendant asserting contributory negligence defense must adduce more than a scintilla of evidence to establish each element of contributory negligence. *Sawyer*, 264 Va. at 75. Drane argues that the giving of instructions on contributory negligence was erroneous because no evidence was presented showing that any negligent act by Drane proximately caused the collision and no evidence was presented that Drane failed to operate her vehicle at a reasonable speed under the circumstances. She also asserts that Pantana's own testimony professing that she knew of no other cause of the collision precludes the giving of the instructions.

- 6 -

Yet Drane testified to facts establishing more than a scintilla of evidence of contributory negligence as part of her own case, responding to questions from her own attorney. Drane opted to present such facts, including her speed while driving,[1] her line of sight leading up to the accident, and the color of her light. Drane also introduced exhibits, photographs of the intersection, her line of sight, and of the vehicles that the jury could analyze to evaluate the issue of contributory negligence.

Drane also argues that Pantana should have been precluded from presenting a defense of contributory negligence at trial because she did not identify any facts to advance the defense in pretrial discovery. Yet she ignores that the facts the trial court determined were relevant to the issue came largely from her own testimony and exhibits. "[W]e accord deference to a trial court's decision regarding discovery disputes and will set aside that decision only if the court abused its discretion." *Am. Safety Cas. Ins. Co. v. C.G. Mitchell Constr., Inc.*, 268 Va. 340, 351 (2004).

The trial court's refusal to sanction under these circumstances is therefore not an abuse of discretion. This Court notes facts in the record that go beyond speculation and create more than a mere scintilla of evidence on the contributory negligence question. Therefore, this Court finds that there was sufficient evidence to support an argument and jury instructions for contributory negligence.

## II. Jury Instructions

Drane argues a series of errors in the jury instructions. This Court reviews de novo whether a jury instruction accurately states the law. *Howsare v. Commonwealth*, 293 Va. 439, 443 (2017); *Payne v. Commonwealth*, 292 Va. 855, 869 (2016). This Court's "sole

---

[1] A driver "traveling an unlawful speed shall forfeit any right-of-way which [they] might otherwise have." Code § 46.2-823.

responsibility" in reviewing a trial court's decision on jury instructions "is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Swisher v. Swisher*, 223 Va. 499, 503 (1982). In other words, "[j]ury instructions are proper only if supported by the evidence, and more than a scintilla of evidence is required." *Dorman v. State Indus., Inc.*, 292 Va. 111, 125 (2016) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 228 (2013)).

Additionally, a "trial court 'has broad discretion over whether to give or deny proposed jury instructions.'" *Huguely v. Commonwealth*, 63 Va. App. 92, 129 (2014) (quoting *Chapman v. Commonwealth*, 56 Va. App. 725, 736 (2010)). "We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022).

Drane argues that the trial court erred in giving all the contributory negligence jury instructions, including the finding instruction and instruction on reasonable speed because the evidence did not support the instructions. As concluded above, more than a scintilla of such evidence was presented and the trial court's instructions on that issue are therefore not an abuse of discretion.

This Court emphasizes the role of the jury in deciphering evidence presented at trial. In most cases, whether someone could avoid an accident is a question of fact over which reasonable men could differ and thus should be decided by the jury. *Butler v. Yates*, 222 Va. 550, 554 (1981); *Kimberlin v. Pm Transp.*, 264 Va. 261, 267 (2002) (holding that whether the driver was driving at an excessive speed even if he traveled at or below maximum allowable speed, given the existing conditions, was a jury issue).

Drane also asserts that the trial court erred in providing Pantana's "green light" instruction rather than Drane's instruction on the yield right-of-way sign. The evidence

- 8 -

established, without dispute, that Pantana approached the intersection with a solid green light and a sign that indicated that left turns must yield before turning. The granted instruction stated that at a green light, the driver, when making a left turn, has a "duty to yield to other vehicles and pedestrians lawfully within the intersection" and "has a duty to exercise ordinary care." The trial court therefore did not abuse its discretion in granting Pantana's instruction over Drane's.

### III. Representation of Counsel

"When the language of a statute is plain and unambiguous, we are bound by the plain meaning of that statutory language." *Jones v. Commonwealth*, 296 Va. 412, 415 (2018) (quoting *Alston v. Commonwealth*, 274 Va. 759, 769 (2007)). "A statute is ambiguous if, among other things, 'the text can be understood in more than one way or [inconsistently] refers to two or more things simultaneously.'" *Id.* (quoting *Blake v. Commonwealth*, 288 Va. 375, 381 (2014)). "To the extent an assignment of error involves statutory construction, we review these issues *de novo*." *Quyen Vinh Phan Le v. Commonwealth*, 65 Va. App. 66, 76 (2015).

The most relevant part of Code § 38.2-2206(K) for analysis states: "No attorney-client relationship is created between the underinsured motorist and counsel for the underinsured motorist benefits insurer without the express intent and agreement of the underinsured motorist, the underinsured motorist benefits insurer, and counsel for the underinsured motorist benefits insurer."

Drane argues that the trial court erred in allowing counsel for the underinsured motorists carrier to represent to the court and jury that he was counsel for Pantana. Drane argues there was no showing at all of the express intent and agreement between the underinsured motorist, the underinsured motorist benefits insurer, and counsel for the underinsured motorist benefits insurer as required by Code § 38.2-2206(K). She asserts that this agreement must be somehow corroborated and established beyond representations to the trial court. Yet, she provides no controlling authority for this assertion.

Before the trial court, counsel for State Farm asserted that he, Pantana, the underinsured motorist, and State Farm, the underinsured motorist insurer, "are in agreement that [he] be allowed to refer to [Pantana] as [his] client." The trial court found that the representation made by counsel satisfied the statute and permitted the representation. We will not disturb this ruling.

IV. Denial of Motions Without a Hearing

Drane asserts the trial court erred in denying her post-trial motions without a hearing. Rule 4:15(d) states that the court will hear oral arguments on a motion only upon request of counsel for any party. Drane's first post-trial motion did not request a hearing for oral argument.

Drane now asserts for the first time on brief that on the day that the trial court dismissed the first post-trial motion, there was an in-person discussion between the parties and the court as to whether oral argument was requested on that motion. That said, however, we cannot consider this discussion, as it is not part of the record and Drane did not file any statement of facts about what happened during this discussion. *See* Rule 5A:8. "An appellate court must dispose of the case upon the record and cannot base its decision upon appellant's petition or brief, or statements of counsel in open court. We may act only upon facts contained in the record." *Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993).

After the final order was entered, Drane then filed a motion for reconsideration, reasserting the same arguments made in her first post-trial motion. The motion for reconsideration explicitly requested oral argument. But "[o]ral argument on a motion for reconsideration . . . will be heard orally only at the request of the court." Rule 4:15(d). Drane was not entitled to an oral argument on her motion for reconsideration, and we reject her assertion that the trial court erred in disposing of her post-verdict motions. *See also N. Va. Real Estate, Inc. v. Martins*, 283 Va. 86, 119 (2012) (affirming the trial court's denial of post-trial motions without a hearing when either not requested or requested only on a motion for

- 10 -

reconsideration). Based on the record, the trial court did not err in denying Drane's post-trial motions without a hearing.

## V. Issues Waived on Appeal

### A. Failure to Give Finding Instruction

Drane argues that the trial court erred in failing to give a jury instruction based on Virginia Model Jury Instruction No. 3.050, which is the instruction on how the jury is to find. No finding instruction was given orally by the trial judge. Drane argues that the instruction would have made it clear to the jury that it could only find the plaintiff contributorily negligent if a negligent act was the proximate cause of the accident, and since it was not given, the jury was misled.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022) (alterations in original) (quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)).

While Drane argues on appeal that the trial court erred in failing to give the finding instruction, she was present as the trial court read the instructions and did not object or otherwise notify the court of the missing instruction. She also failed to raise this issue to the trial court in her post-trial motions. Her failure to object waives this argument on appeal. Drane does not argue any exceptions to the preservation requirement of Rule 5A:18, and this Court cannot raise them sua sponte. *See id.* at 756.

B. Scope of Dr. Bender's Testimony

Drane argues that the trial court erred in permitting Dr. Scott Bender to testify as to his conclusions about whether Drane sustained a concussion in the collision. On appeal, Drane presents a detailed argument that only medical doctors can testify as to certain facts and that Dr. Bender's qualifications as a neuropsychologist are insufficient. She relies on statutory and case law authority in drawing a nuanced distinction between the types of testimony that a medical expert can provide versus what a non-medical expert can provide. But she presented none of this argument to the trial court. At trial, she simply stated, "Dr. Bender is [not] qualified to give that kind of opinion," and reiterated, "I still maintain my objection."

"Specificity and timeliness undergird the contemporaneous objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Hogle*, 75 Va. App. at 755 (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)). "Not just any objection will do. It must be both specific and timely—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "If a party fails to timely and specifically object, he waives his argument on appeal." *Id.*

Drane's objection to Dr. Bender's testimony at trial lacked the necessary specificity to now present on appeal a detailed argument distinguishing the scope of permissible testimony between medical and non-medical expert witnesses. Drane objected on foundation, and never objected again with specificity once more foundation was given. Another specific objection was necessary to show that Drane was objecting to the type of doctor Dr. Bender claimed to be, as Drane argues on appeal. The trial court was not put on sufficient notice of this issue during trial, did not contend with the argument now presented on appeal, and we decline to entertain it now for the first time. *See* Rule 5A:18.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court.

*Affirmed.*