COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Humphreys
Argued at Richmond, Virginia


MARY CRAWLEY
                                                           OPINION BY
v.       Record No. 2488-03-2                 JUDGE ROBERT J. HUMPHREYS
                                                             JUNE 8, 2004
HAROLD FORD


            FROM THE CIRCUIT COURT OF THE CIY OF RICHMOND
                         Melvin R. Hughes, Judge

        Reginald M. Barley for appellant.

        No brief or argument for appellee.

        No brief or argument from the guardian *ad litem* for the minor
        child.


        Mary Crawley appeals a decision of the circuit court, awarding Harold Ford and his wife,

Sonia Ford, legal and primary custody of Ford's minor child.  The circuit court entered its award

based upon an alleged "agreement" between Crawley, the minor child's maternal grandmother,

and Ford.  Crawley contends that the court erred in finding that she and Ford "reach[ed] [such]

an agreement."  In the alternative, Crawley contends that the court erred in honoring the

agreement, because it purportedly "violated the public policy regarding [the child's mother's]

right to seek custody and visitation of her child."  Finally, Crawley argues that the court erred in

awarding custody of the child to Ford because the court failed to find that a material change in

circumstances had occurred since the previous custody order.  Because we find that Crawley

failed to provide an adequate record to enable us to consider her arguments on appeal, we affirm

the judgment of the circuit court.

I. Background

On July 24, 1995, Crawley, Harold Ford and Tenielle A. Smith reached an agreement, after participating in court-ordered mediation, pertaining to the custody of Ford and Smith's infant child. Specifically, the parties agreed that Smith and her mother (Crawley) would "have joint physical and joint legal custody" of the infant child, while Ford would retain the right to exercise "reasonable visitation" with the child. In 1999, upon Crawley's own motion to amend custody, the juvenile and domestic relations (J&DR) district court granted Crawley full custody of the minor child.

On February 8, 2002, Ford filed a motion with the J&DR court, requesting that custody of the child be "changed, amended and/or modified" to joint legal custody in Ford and Smith. Ford requested that a summons for the hearing on his motion be served upon both Crawley and Smith. After a hearing on the motion, the J&DR court ruled "custody is awarded to father and stepmother, Harold and Sonia Ford; reasonable visitation to maternal grandmother, Mary Crawley, as agreed to by parties."

Crawley subsequently filed a civil appeal notice, requesting a trial *de novo* in circuit court. The circuit court took evidence on the matter on November 7, 2002. The record contains no transcript of the proceeding, but does contain a written statement of facts in lieu thereof. The written statement of facts provides as follows, in pertinent part:

> 3. [Crawley] stated that [the child], age 7, had been residing with her since she was brought home from the hospital in March, 1995. Crawley testified that [the child] has been doing well in school. Crawley presented the court with [the child's] report cards, awards and various certificates of achievement, including perfect attendance and "spelling bees," from George Mason Elementary School. Crawley testified that [the child] was in Girl Scouts. Crawley stated that [the child] was in good health. Crawley testified that [the child] was doing well, happy with her and that it was in the child's best interest that [the child] remain with her. Crawley stated that her health was good.

4. [Ford] stated that he was a police officer with the Richmond Department of Police. Ford stated that he was married to Sonia Ford. [Ford] stated that he and his wife were foster parents for four (4) other children. [Ford] stated he thought that it was in [the child's] interest that he and his wife have custody of his child. [Ford] stated that he did not want [the child] to have visitation with [Crawley]. [Ford] stated that he disapproved of many of the activities that [Crawley] . . . was teaching the child. Specifically, [Ford] stated that he disapproved of his child learning to fish, make cookies, sew, going to the mountains and skateland. [Ford] presented to the Court an undated report, from the Broad Rock Counseling & Training Associated [sic].

5. The court continued the trial in order to obtain a report from the guardian *ad litem* of [the child].[1]

The record next reflects that Crawley filed a motion with the circuit court, requesting that it reinstate the custody order of July 24, 1995. During the August 14, 2003 hearing on that motion, for which a transcript was prepared and included in the record on appeal, counsel for Crawley and Ford explained that the trial *de novo* had been reconvened on June 16, 2003, for purposes of hearing from the child's guardian *ad litem.* During the June 16 proceeding, Crawley's former counsel and Ford's counsel informed the court that they had reached a "verbal resolution of [the] matter." According to Ford's counsel, Crawley's former counsel advised the court that it was Crawley's "desire to withdraw her appeal" and that an agreement had been reached "that involved visitation for [Crawley]." Ford's counsel further proffered that the court then "questioned [Crawley] specifically and asked [Crawley] if that, in fact, was what she desired to do and [Crawley] responded in the affirmative." After the child's guardian *ad litem* indicated to the court that he agreed with the arrangement made between Crawley and Ford, the

---

[1] We note that Crawley's current counsel prepared and filed the written statement of facts, attesting to the testimony presented during the November 7, 2002 hearing. Nevertheless, during the August 14, 2003 proceeding from which this appeal was taken, Crawley's counsel acknowledged that he was not present during that proceeding, that no "record" was prepared for that proceeding, and that he did "not know what [the evidence] was."

court "said[, '][F]ine, you all prepare the Order and submit it to me.[']"[2]  However, according to Ford's counsel, Crawley's former counsel contacted him a few days later and informed him that she was withdrawing as Crawley's counsel because "Crawley no longer wanted to enter into the arrangement that [the parties] agreed upon" "in court."

Crawley's new counsel argued the "representations that were made by [Crawley's] former counsel were not things that she had consented to or agreed to.  That she went beyond the scope of what she had authorized her to do."  Crawley's counsel thus contended that there was no "meeting of the minds" and the parties were "at square one."

The circuit court responded as follows:

> Well, the problem that I have is that the Court did take evidence in this case.  I heard evidence.  I heard testimony from [Crawley], [Ford] and perhaps [Ford's] wife.  And the case was continued in order to provide an opportunity for input from the guardian who was not present at that hearing.
>
> When that hearing came forward or when that case was brought up again, for the purpose of getting [the guardian *ad litem's*] input, the parties indicated that they had resolved their differences.  That resolution was – well, I don't know that it was consistent with what the Court would have done, but it was satisfactory because the only thing left to be done at that point was to have [the guardian *ad litem's*] report with all of the parties present.
>
> And, but for this agreement that they had, I would have heard from [the guardian *ad litem*] and then decided the case based on the evidence previously introduced.  And that agreement that they arrived at was consistent with the best interest of the child and [the guardian *ad litem*] so reported and that was the end of the matter as far as I'm concerned.

Noting that "the parties ought [not] play fast and [loose] with the Court," the circuit court determined that it would enter an order "consistent with the hearing on June 16th."

---

[2] The guardian *ad litem* for the child advised the court that he too recalled the parties had reached a resolution of the matter, that he had indicated he was in favor of the agreement, and that the court had ordered the matter be disposed of accordingly.

Crawley's counsel signed the final order as "Seen and Objected To," providing several grounds for her objections. This appeal followed.

## II. Analysis

Crawley first contends on appeal that the circuit court erred in finding the parties reached an agreement concerning the custody of the child. Specifically, Crawley contends that she did not authorize her former counsel to enter into the agreement (under the terms stated) and that the terms of the agreement, as stated during the August 2003 hearing, varied from the terms of the final order. Thus, Crawley argues the circuit court erred in finding there was a "meeting of the minds" and "mutuality of assent" necessary to create an enforceable agreement.

Crawley next contends that the circuit court erred in finding that the parties reached an agreement because the original agreement "illegal[ly]" purported to restrict Smith's right to seek custody of her child. Although Crawley recognizes that the alleged "illegal" provision was not included in the court's final order, Crawley contends the lack of that provision is further evidence that the parties failed to reach a valid agreement.

Finally, Crawley contends that the circuit court erred in awarding custody to Ford, because the court failed to find that a material change of circumstance had occurred in order to support the change in the prior custody order. In particular, Crawley argues the circuit court "should have conducted a trial *de novo* of Ford and Smith's petition for a change of custody."

Contrary to Crawley's contention, we find that the limited record available here demonstrates that the circuit court did, indeed, conduct a trial *de novo* concerning Ford's petition

for custody.[3]  In fact, the court held at least two hearings in order to take evidence on the various petitions filed by both Ford and Crawley.  Nevertheless, because counsel for the respective parties indicated to the circuit court that the parties had reached an agreement resolving the matter, the circuit court was never given the opportunity to reach the merits of the custody issue, beyond its determination that the purported agreement between the parties was in keeping with the best interests of the child.

From this record, however, we are unable to determine whether the court erred in approving of the alleged agreement and/or in ultimately entering an order professing to be consistent with that agreement.  Indeed, we are unable to reach the merits of any of Crawley's remaining arguments because the record here contains no evidence relating to the alleged agreement.  Without such evidence, we are unable to review the propriety of the circuit court's factual determination that an agreement was in fact made and that it was made consistent with the terms reflected in the order.  We are thus, likewise, unable to consider whether the alleged "original" terms of the agreement created an "illegal" or otherwise invalid arrangement.

The appellate courts of this Commonwealth

> [h]ave many times pointed out that on appeal the judgment of the
> lower court is presumed to be correct and the burden is on the
> appellant to present to us a sufficient record from which we can
> determine whether the lower court has erred in the respect
> complained of.  If the appellant fails to do this, the judgment will
> be affirmed.

Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961); see also Lawrence v. Nelson, 200 Va. 597, 598-99, 106 S.E.2d 618, 620 (1959) ("An appellant who seeks the reversal of a

---

[3] Smith did not appeal the J&DR court's award of custody to Ford and thus, was not a party to the initial proceedings in circuit court.  For that reason, Smith was also not a party to the alleged agreement.  Although Crawley raised this as an issue before the circuit court, Crawley does not raise Smith's absence as an issue in her brief on appeal.  We, thus, do not further address the issue.

decree on the ground that it is contrary to the law and the evidence has the primary responsibility of presenting to this court, as a part of the printed record, the evidence introduced in the lower court, or so much thereof as is necessary and sufficient for us to give full consideration to the assignment of error."); Twardy v. Twardy, 14 Va. App. 651, 658, 419 S.E.2d 848, 852 (1992).

The record in this case consists of no evidence concerning the error complained of - namely, the circuit court's determination that Crawley agreed to a resolution of that matter pursuant to the terms reflected in the court's final order. There are no documents in the record purporting to reference the terms or circumstances of the alleged agreement. Further, the written statement of facts provided on appeal reflects only testimony that was given concerning the evidentiary aspects of Ford's motion to amend custody. It contains no information concerning the alleged agreement.

Finally, the sole transcript that appears in the record consists only of disputed proffers of counsel and statements made by the trial court pertaining to its memory of the proceedings during which the agreement was allegedly reached. Such proffers and statements do not constitute evidence from which this Court can make a determination as to whether the trial court erred in reaching its judgment.

First, the statements at issue were not offers of proof – because the record does not reflect that the trial court refused the admission of the evidence at issue. See Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977) ("[W]hen testimony is rejected before it is delivered, an appellate court has no basis for adjudication [of that issue] unless the record reflects a proper proffer."). Even if they were, standing alone, these statements could not provide us with a sufficient record on appeal from which we could review the propriety of the circuit court's factual determination. See id.; Lowery v. Commonwealth, 9 Va. App. 304, 308,

387 S.E.2d 508, 510 (1990) (noting "the proffer [is] *necessary only to provide a complete record for appeal"* (emphasis added)).

Moreover, these statements did not amount to stipulations, judicial admissions or even evidentiary admissions.  See Lane v. Lane, 32 Va. App. 125, 129, 526 S.E.2d 773, 775 (2000) ("The Virginia Supreme Court has defined stipulation to mean 'an *agreement between counsel respecting business before a court.'"* (quoting Burke v. Gale, 193 Va. 130, 137, 67 S.E.2d 917, 920 (1951)) (emphasis added)); Charles E. Friend, The Law of Evidence in Virginia, § 18-37, at 839 (6th ed. 2003) ("'Judicial admissions' are *concessions made by a party* during the course of litigation which bind the party and prevent contrary evidence from being introduced." (emphasis added)); Id. ("'Evidential admissions,' also called 'extra-judicial admissions,' are statements made outside the scope of the court proceedings.  *These are admissible in evidence, but are not binding or conclusive*." (emphasis added)).

"A proffer is not evidence, *ipso facto*."  United States v. Reed, 114 F.3d 1067, 1070 (10th Cir. 1997).  Without such evidence, or a proper record of the proceeding during which the agreement was made, this Court simply cannot conduct an examination of the circumstances in order to determine whether the trial court erred in its recollection and finding that Crawley consented to the agreement to resolve the case, pursuant to the terms stated in the court's final order.[4]  Justis, 202 Va. at 632, 119 S.E.2d at 256-57.

For these reasons, we affirm the judgment of the circuit court.

                                                                                Affirmed.

---

[4] We note that Crawley's counsel accurately points out that the terms reflected in the order vary from those stated by Ford's counsel during the August 14, 2003 proceeding. Nevertheless, because we have no evidence or record reflecting the actual terms of the original agreement, we find that we cannot review the propriety of the circuit court's determination that the final order accurately reflected those terms.