KELSEY, J., with whom BUMGARDNER and McCLANAHAN, JJ.,
join, concurring.
On the sufficiency issue, I join in the reasoning and result of the plurality opinion. On the plea agreement issue, I join only in the result reached by the plurality—preferring instead to decide the issue on narrower grounds.[11] I write separately on the recusal issue to underscore the legitimacy of the trial court’s control over its docket and the illegitimacy of Wilson’s claim that the trial judge’s effort to do so in this case warrants his recusal.
I. The Unproffered Plea Agreement
I see no need to decide whether Rule 3A:8(c)(2) serves as a de facto statute of frauds governing plea agreements. Nor is *438 it necessary to speculate about whether the trial judge made a factual finding that the putative plea bargain in this case was an unenforceable agreement to agree. Before either of those questions need be answered, we must first be given a proffer of the plea agreement that Wilson claims the trial judge refused to consider. That threshold sine qua non of appellate review has not been met here.[12]
When an appellant claims a trial judge erred by refusing something offered at trial, we can hardly begin the appellate task of reviewing the propriety of the trial judge’s decision without first knowing exactly what it was he refused. See generally Rose v. Jaques, 268 Va. 137, 154, 597 S.E.2d 64, 74 (2004); Holles v. Sunrise Terrace, Inc., 257 Va. 131, 135, 509 S.E.2d 494, 497 (1999). This prudential rule protects the judiciary from unknowingly engaging in purely hypothetical reasoning. For even if the trial judge erred, there may be any number of reasons why the error should be dismissed as harmless. Without having a proffer, we can reverse only by presuming no such reasons exist. Appellate courts, however, do not make presumptions in order to reverse a lower court judgment. We do just the opposite.
The appellate courts of this Commonwealth “have many times pointed out that on appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of. If the appellant fails to do this, the judgment will be affirmed.”
Crawley v. Ford, 43 Va.App. 308, 315, 597 S.E.2d 264, 268 (2004) (quoting Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961)).
*439 This case proves, as well as any, the virtue of the rule. Wilson was convicted of four crimes.[13] Two involved five-year mandatory minimum sentences that, by statute, could not be suspended and, by themselves, mandated a ten-year penitentiary sentence. Though Wilson claimed he made a plea bargain, he never once told the trial judge which charges he bargained for. All the trial judge knew was that, whatever the configuration of the charges, the net incarceration period would be only four years—less than half the mandatory, minimum sentences of just two of his four charges.
To find any reversible error in the trial judge’s refusal to consider Wilson’s putative plea agreement, we must necessarily presume Wilson would not have pled guilty to either of the two charges carrying five-year mandatory minimum sentences. Had he done so, Wilson’s plea bargain would have violated the statutory minimum sentence as a matter of law. See generally In re: Commonwealth of Virginia, 229 Va. 159, 163, 326 S.E.2d 695, 697 (1985) (“Clearly, therefore, by prescribing a mandatory sentence, the General Assembly has divested trial judges of all discretion respecting punishment.”). Under these circumstances, no trial judge would be reversed for refusing to consider such a facially flawed plea bargain— notwithstanding the reason, however erroneous, he may give for the refusal.
*440 At no point did Wilson ever attempt to make a proffer (either orally or in writing) of the essential elements of the alleged agreement. Nor did Wilson say anything in the trial court to suggest how he would square his four-year sentence with the various charges he faced. To be sure, even when asked on appeal during en banc oral argument which charges, if any, would have been dismissed pursuant to the plea agreement, Wilson’s counsel replied: “I assume some of them would, but I don’t know.... I had an idea, but certainly it’s not in the record.”
In short, even if Judge Griffith erroneously refused to consider the putative plea agreement (either because it was not in writing, or was untimely, or whatever), there may very well have been perfectly valid reasons for reaching the same conclusion—rendering the claimed error harmless and any appellate reversal imprudent. We cannot presume no such reasons exist. By not proffering the alleged plea agreement, therefore, Wilson disabled us from passing judgment on the propriety of the trial judge’s refusal to consider it.
II. Recusal of The Trial Judge
Depending on the circumstances, a display of indignation by a trial judge may be the product of an impermissible bias against a litigant or a permissible zeal for protecting the judicial process from manipulation. The former may compel disqualification; the latter certainly does not. The appellate task of distinguishing between the two, no doubt, can be a subtle exercise in discerning a trial judge’s motivations—a poorly discernible subject even when witnessed first person in a trial courtroom, but near inscrutable when evidenced on appeal only by a cold transcript. Given these limitations, we should be loath to impugn a trial judge with an allegation of bias unless the record clearly demonstrates it, a conclusion I cannot reach in this case.
After repeatedly requesting a bench trial, Wilson arrived on the day of trial in Judge Poston’s courtroom. Before his case was called from the docket, however, Judge Poston had to leave the bench for a doctor’s appointment. Judge Griffith *441 agreed to hear the remainder of Judge Poston’s docket. After being escorted to Judge Griffith’s courtroom, Wilson abruptly demanded a jury trial. Because no jury venire had been assembled, Wilson knew his request would necessitate a continuance. Judge Griffith nonetheless accepted Wilson’s jury election and continued the trial to accommodate his request.
Later, Wilson appeared before Judge Martin to withdraw the jury election and to request the matter be rescheduled as a bench trial. Judge Martin reluctantly granted the motion and returned the case to the bench trial docket. After reading the transcript of the earlier hearing before Judge Griffith, however, Judge Martin expressed his concerns this way:
I have no qualms about somebody who’s previously asked for a jury trial coming in two or three days before trial and changing his mind and saying he wants a bench trial. Jurors aren’t inconvenienced, but when somebody is just judge shopping, then it does concern me when he later comes in and says now I don’t want a jury and, in effect, I’d be awarding his judge shopping. That’s what concerns me about it.
(Emphasis added.) Judge Martin then acknowledged that, regrettably, “judge shopping is a time honored tradition, been going on for centuries”—to which Wilson’s counsel unapologetically replied: “You do the best you can.” It thus became obvious that Wilson earlier requested a jury trial not because he truly wanted a jury trial, but because he wanted a continuance for purposes of shopping for a different trial judge to preside over a bench trial.
Not unaware of this form of procedural gamesmanship, then-Chief Judge Jacobson, Judge Griffith, and Judge Martin later agreed that Wilson’s bench trial should be reassigned to Judge Griffith. This decision placed Wilson in exactly the same position he was in before his short-lived jury election, hardly a fate he could justly complain about. Having been confronted with an impenitent abuse of the judicial process, the trial judges reacted prudently to disqualify the abuser *442 from his intended prize. “Judge shopping,” after all, “is not a practice that should be encouraged.” In re Mann, 229 F.3d 657, 658 (7th Cir.2000). Without question, “a court faced with judge-shopping has the authority to act to preserve the integrity and control of its docket.” Vaqueria Tres Monjitas v. Rivera Cubano, 341 F.Supp.2d 69, 72 (D.P.R.2004).
Given these circumstances, I cannot in good conscience attribute ill will to Judge Griffith’s participation in the collective decision to return Wilson’s case to his bench trial docket. In the trial courts of this Commonwealth, a jury election should be used only by a defendant truly seeking a jury trial— not as a temporary expedience for delaying a bench trial for purposes of shopping for a different trial judge. If a prosecutor were to do such a thing, we would rightly expect our trial courts to rebuke the effort as a subterfuge. It is no less unacceptable for a criminal defendant to engage in this practice.
For these reasons, I join in the decision to affirm Wilson’s convictions.

. "Faithful adherence to the doctrine of judicial restraint provides a fully adequate justification for deciding this case on the best and narrowest ground available." Anzualda v. Commonwealth, 44 Va.App. 764, 789-90, 607 S.E.2d 749, 762 (2005) (Kelsey, J., concurring) (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531, 111 S.Ct. 913, 921-22, 112 L.Ed.2d 1125 (1991) (Stevens, J., concurring)); see also Johnson v. Commonwealth, 45 Va.App. 113, 117 n. 3, 609 S.E.2d 58, 60 n. 3 (2005).

. The plurality opinion notes this point, albeit in passing. Ante at 12-13 (apparently holding that "the parties did not proffer any of the other necessary specifics of a proper plea agreement”); see also Wilson v. Commonwealth, 2005 WL 86467, No. 1229-03-1, slip op. at 27 (Va. App., Jan. 18, 2005) (Humphreys, J., concurring & dissenting) ("Moreover, the parties did not proffer any of the other necessary specifics of a proper plea agreement.... ”).

. Wilson committed the offenses in December 2001. These four indictments alleged possession of cocaine with intent to distribute (Code § 18.2-248), possession of a firearm while in possession of drugs (Code § 18.2-308.4), possession of a firearm by a convicted felon (Code § 18.2-308.2), and possession of marijuana greater than one-half ounce and less than five pounds with intent to distribute (Code § 18.2-248.1). The felony firearm charge carried a five-year minimum, mandatory sentence because Wilson had previously been convicted of burglary, a violent felony. See Code §§ 18.2-308.2(A), 17.1-805(C). It could not be run concurrently with any other sentence. Id. The simultaneous possession of a firearm and PWID also carried a five-year mandatory minimum sentence. See Former Code § 18.2-308.4(B) (now subsection C). Wilson also faced a fifth charge alleging the simultaneous possession of a firearm and PWID which Judge Griffith dismissed. This charge also carried a five-year mandatory minimum sentence.