COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Alston
Argued at Richmond, Virginia


TERRY MONTAIN MILLER

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1353-08-2                      JUDGE LARRY G. ELDER
                                                       SEPTEMBER 22, 2009
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                          Clarence N. Jenkins, Jr., Judge

           Elliott B. Bender (Elliott B. Bender, PLLC, on briefs), for appellant.

           Robert H. Anderson, III, Senior Assistant Attorney General (William
           C. Mims, Attorney General, on brief), for appellee.


        Terry Montain Miller (appellant) appeals from his jury trial convictions for two counts of

robbery, one count of attempted robbery, three counts of using a firearm in the commission of a

robbery or attempted robbery, and possession of a firearm by a convicted felon.  On appeal, he

contends the trial court erred in permitting the Commonwealth to use its four peremptory strikes

against African-American venirepersons given that the Commonwealth's only explanation for

three of the strikes was based on alleged facts known only to the Commonwealth and not on any

information elicited during voir dire of the venire panel.  Appellant also contends the trial court

erred in ruling the admission of the firearms and ballistics examination certificate did not violate

appellant's right of confrontation and that Virginia's statutory provision allowing him to call the

analyst did not alleviate the Confrontation Clause violation because it constituted impermissible

burden-shifting.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

We hold appellant failed to present an adequate record from which we might determine whether the trial court erred in denying appellant's challenge to the racial composition of the jury. We also hold that although the ballistics certificate contained testimonial hearsay, appellant waived his right to confront the preparer of the certificate or, in the alternative, that if appellant did not waive this right, any error in admitting the ballistics certificate was harmless on the facts of this case, in which the certificate was never actually marked as an exhibit or published to the jury. Thus, we affirm appellant's convictions.

I.

A.

JURY SELECTION AND PEREMPTORY STRIKES

The appellate courts of this Commonwealth

> have many times pointed out that on appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of. If the appellant fails to do this, the judgment will be affirmed.

Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961).

Here, appellant challenges the Commonwealth's stated basis for peremptorily striking four potential jurors, whom appellant contends were all African-American. However, the partial transcript of the jury selection and trial before us on appeal contains conflicting information about which jurors were struck and how many of the stricken jurors were African-American, and it does not include the Commonwealth's individual voir dire of any of the venire members. It contains only *the trial court's* voir dire of the panel, appellant's Batson challenge to the Commonwealth's peremptory strikes, the Commonwealth's recitation of its reasons for the strikes, and the trial court's ruling on the Batson motion. It does not contain the questions appellant's counsel and the prosecutors asked the potential jurors or the responses they received.

- 2 -

Appellant contends that because he argued his objections on the record "with no objections or corrections by the Commonwealth," his averments amounted to a "proffer" and the "fact that the court reporter failed to transcribe the voir dire examination should be of no significance." We disagree.

"[P]roffers and statements do not constitute *evidence* from which this Court can make a determination as to whether the trial court erred in reaching its judgment." Crawley v. Ford, 43 Va. App. 308, 315-16, 597 S.E.2d 264, 268 (2004) (emphasis added). A proffer is proper when a party seeks the admission of certain testimony or other evidence and the trial court rules that evidence inadmissible. Id. at 316, 597 S.E.2d at 268. A proffer of the actual or expected testimony or exhibit is necessary to permit appellate review of the ruling excluding the evidence. Id.

Here, by contrast, the voir dire of the potential jurors *actually occurred* but was not transcribed. Appellant may not now rely upon his unilateral assertions concerning what transpired simply because the Commonwealth did not object to each of the factual assertions he made to support his argument in the trial court. Id. (discussing what is required to constitute a stipulation, judicial admission or evidential admission); see Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993) ("An appellate court must dispose of the case upon the record and cannot base its decision upon appellant's petition or brief, or statement of counsel in open court."); see also Rule 5A:8(c) (permitting a party to submit a written statement of facts, expressly approved by the trial judge, in lieu of or in conjunction with a transcript).

In sum, "'A proffer is not evidence, *ipso facto*.' Without such evidence, or a proper record of the proceedings during which the [challenged action occurred], this Court simply cannot conduct an examination of the circumstances in order to determine whether the trial court erred . . . ." Crawley, 43 Va. App. at 316-17, 597 S.E.2d at 268-69 (quoting United States v.

- 3 -

Reed, 114 F.3d 1067, 1070 (10th Cir. 1997)). Accordingly, we may not consider appellant's Batson claim.

B.

ADMISSION OF THE BALLISTICS CERTIFICATE

Appellant contends on appeal that the ballistics certificate was testimonial under Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), that the trial court's ruling admitting the ballistics certificate without requiring the Commonwealth to call the preparer of the certificate violated his Confrontation Clause rights, and that the provision of Code § 19.2-187.1 permitting him to call the ballistics analyst as a witness did not alleviate this violation because this mechanism amounted to unconstitutional "burden shifting."

We agree that the ballistics certificate was testimonial under Crawford. See Melendez-Diaz v. Massachusetts, 557 U.S. ___, ___, 129 S. Ct. 2527, 2531-32, 174 L. Ed. 2d 314, 320-22 (2009) (holding certificates of drug analysis were affidavits that qualified as testimonial under Crawford, triggering the defendant's right to confront the preparers); see also Grant v. Commonwealth, __ Va. App. ___, ___, ___ S.E.2d ___, ___ (Sept. 1, 2009) (applying Melendez-Diaz to hold that the attestation clause on a certificate of breath analysis is testimonial in nature and that its admission in the face of a proper objection, without providing an opportunity for cross-examination of the attestor, constituted a violation of the Confrontation Clause).

Nevertheless, we conclude the admission of the ballistics certificate did not violate appellant's Confrontation Clause rights under the facts of this case. As our Supreme Court has recognized, "it is undisputed that a criminal defendant can waive the right to confrontation," and "[t]he decision in Crawford did not alter that fact." Magruder v. Commonwealth, 275 Va. 283, 302, 657 S.E.2d 113, 122-23 (2008), cert. granted sub nom. Briscoe v. Virginia, ___ U.S. ___,

- 4 -

129 S. Ct. 2858, 174 L. Ed. 2d 600 (2009); see Melendez-Diaz, 557 U.S. at ___ n.3, 129 S. Ct. at 2534 n.3, 174 L. Ed. 2d at 323 n.3.  The Court has held that "'Code § 19.2-187.1 sets out a reasonable procedure to be followed in order for a defendant to exercise his right to confront a particular limited class of scientific witnesses at trial'" and that this procedure "adequately safeguards a criminal defendant's rights under the Confrontation Clause."  Magruder, 275 Va. at 301, 305, 657 S.E.2d at 122, 124 (quoting Brooks v. Commonwealth, 49 Va. App. 155, 164, 638 S.E.2d 131, 136 (2006)).  Finally, the Court has concluded "that [a] defendant['s] failure . . . to utilize that procedure waive[s] [the] right to be confronted with the forensic analyst[], i.e., to enjoy the elements of confrontation."  Id. at 305, 657 S.E.2d at 124; see Grant, ___ Va. App. at ___, ___ S.E.2d at ___ (applying Magruder to hold the defendant preserved his right of confrontation by "notify[ing] the Commonwealth [in a timely fashion] 'that he desire[d] that the preparer of the certificate . . . *be summoned by the Commonwealth to appear at trial* . . . at the cost of the Commonwealth to be cross-examined in this matter'" (emphasis added in Grant)).

Here, the trial court ruled, consistent with Virginia Supreme Court precedent, see Magruder, 275 Va. at 305, 657 S.E.2d at 124, that appellant waived his confrontation right by failing to call the analyst.  Further, appellant did not contend in the trial court, as he now argues on appeal, that Virginia's statutory scheme impermissibly shifted to him the burden of calling the analyst.  See id. at 301, 657 S.E.2d at 122 (concluding that "[t]his burden shifting argument is not cognizable under the Confrontation Clause [and] [i]nstead . . . raises due process concerns that are not properly before us [on] appeal[] [b]ecause the defendants did not avail themselves of the opportunity to require the presence of a particular forensic analyst at trial [and, thus,] . . . were never in the position of being forced, over their objection, to call a forensic analyst as a witness" (citation omitted)); see also Brooks, 49 Va. App. at 168-69 & n.6, 638 S.E.2d at 138 & n.6 (suggesting how Virginia's statutory scheme might be construed so as to avoid any allegation

of impermissible burden-shifting). Thus, appellant failed to satisfy the contemporaneous objection requirement of Rule 5A:18. He also does not seek application of Rule 5A:18's ends of justice exception, which we may not invoke *sua sponte*. Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (en banc), aff'd by unpub'd order, No. 040019 (Va. Oct. 15, 2004); see also Melendez-Diaz, 557 U.S. at ___ & n.12, 129 S. Ct. at 2541 & n.12, 174 L. Ed. 2d at 332 & n.12 (without "pass[ing] on the constitutionality of every variety of statute commonly given the notice-and-demand label," holding that "the simplest form [of] notice-and-demand statutes" is constitutional because a "defendant *always* has the burden of raising his Confrontation Clause objection" and "notice-and-demand statutes simply govern the *time* within which he must do so," and observing further that "[s]tates are free to adopt procedural rules governing objections").

Finally, even if the trial court erred in concluding that appellant waived his right of confrontation and, thus, erred in admitting the certificate of analysis into evidence, we nevertheless conclude any such error was harmless on the facts of this case.

Error involving the Confrontation Clause is subject to constitutional harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438, 89 L. Ed. 2d 674, 686 (1986). "The correct inquiry is whether, assuming that the damaging potential of the [evidence] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." Id. Thus, "a harmless error analysis . . . [is not] simply a sufficiency of the evidence analysis." Hooker v. Commonwealth, 14 Va. App. 454, 458, 418 S.E.2d 343, 345 (1992). Whether an error is harmless must be "determined 'without usurping the jury's fact finding function.'" Corado v. Commonwealth, 47 Va. App. 315, 323, 623 S.E.2d 452, 456 (2005) (quoting Hooker, 14 Va. App. at 457, 418 S.E.2d at 345).

> "Whether such an error is harmless in a particular case depends
> upon a host of factors, all readily accessible to reviewing courts.

> These factors include the importance of the [evidence] in the prosecution's case, whether the [evidence] was cumulative, the presence or absence of evidence corroborating or contradicting the [erroneously admitted evidence] on material points, the extent of [confrontation] otherwise permitted, and, of course, the overall strength of the prosecution's case."

Dearing v. Commonwealth, 260 Va. 671, 673, 536 S.E.2d 903, 904 (2000) (quoting Van Arsdall, 475 U.S. at 684, 106 S. Ct. at 1438, 89 L. Ed. 2d at 686-87).

This case involves a somewhat unique twist in that, although the trial court ruled the challenged ballistics certificate would be admitted as Commonwealth's Exhibit Number 4, the document so marked was actually a duplicate of a different certificate of analysis, one involving DNA, which was subsequently admitted without objection as Commonwealth's Exhibit Number 5. As a result, although the document labeled Commonwealth's Exhibit Number 4 was published to the jury, the exhibit as published contained none of the ballistics information appellant had sought to exclude. Thus, the admission of the exhibit itself caused no *direct* harm to appellant, and we turn to an examination of any indirect harm that may have resulted from references made about the exhibit by the witnesses in their testimony and by counsel in argument.

Appellant's theory of the case was that he did not attempt to rob Gillings, Ray, and Windley and that he did not possess a weapon at the scene of their encounter. He contended instead that *Gillings* accosted *him*, that Gillings was the only person who possessed and fired a weapon, and that Gillings and his companions were lying to keep Gillings from getting into trouble for discharging his weapon without cause. The Commonwealth's theory of the case was that appellant robbed Gillings, Ray, and Windley[1] at gunpoint, that Gillings discharged his own

---

[1] The Commonwealth admitted the evidence proved that appellant only attempted to rob Windley, and the trial court agreed, striking the evidence as to the indictment for robbery of Windley. Appellant was convicted of attempted robbery of Windley.

firearm, a .357 caliber weapon, in an attempt to protect his property, and that appellant fired at least two shots at the scene after Gillings began to discharge his weapon. Gillings testified that he fired his weapon "maybe about nine times" in all from his position between two cars and that after Gillings fired his first shot, appellant fired once, fell backward, and then fired two more shots, for a total of three shots. Sergeant House testified that he recovered an unattended .40 caliber firearm at the scene and that Gillings relinquished his own .357 caliber firearm to House at the scene. House testified that he collected two different "bunches" of shells at the scene, for a total of nine, but he gave no further testimony describing the quantity of shells in each group or indicating the caliber of the weapon any of the shells was designed to be used in. Sergeant House also testified he did not recall whether he sent the spent shell casings "to the lab for comparison to the two firearms." The ballistics certificate—which indicated that two of the shells were .40 caliber shells that had been fired from the unattended .40 caliber weapon seized at the scene and that the other seven shells were .357 caliber shells that had been fired from Gillings' .357 caliber weapon—was the only evidence affirmatively linking the shells to the two weapons or even to weapons of their caliber. The record indicates that, despite the court's ruling admitting the ballistics certificate, it was never published to the jury, and all proceedings related to the admission of the certificate were held outside the hearing of the jury.

In argument, the Commonwealth contended that if the victims had fabricated their story about what happened, they would have to have planted their belongings in the road, planted the unattended firearm, "and then they would have had to have fired it, because remember there are spent shell casings that go along with that gun. You have seen the ballistics report and you can take it back with you into [the jury room]." The Commonwealth also later argued that "the gun that [appellant] held when he left the DNA, the gun that left the gunshot primer residue on his

- 8 -

hand, the gun that three people saw him holding, pointing at them, demanding their stuff, that gun had spent shell casings in the road where the robbery occurred."

Appellant contends that although a duplicate DNA certificate rather than the ballistics certificate was published to the jury, he was still prejudiced by the trial court's ruling that the ballistics certificate was admissible because the jury was aware such a certificate existed, the Commonwealth argued its contents, and he, himself, was thus "unable to argue in closing that there was no evidence inconsistent with one gun being fired and where each shell casing might have originated."

Despite appellant's contentions, the record indicates the Commonwealth's arguments to the jury about the ballistics certificate were very general. The Commonwealth did not mention the caliber of the weapons or the casings and argued merely that "there are spent shell casings that go along with that gun," "spent shell casings in the road where the robbery occurred." Although the ballistics certificate indicated two of the shells had been fired from the unattended .40 caliber weapon, neither the Commonwealth's evidence, other than the ballistics certificate never published to the jury, nor the Commonwealth's argument mentioned this fact. Further, appellant expressly argued in closing that Gillings "clear[ly] . . . stated . . . he shot nine times," that "the evidence [showed] [o]nly nine shell casings [were] found," and, thus, that "the evidence you have before you" showed Gillings "shot all of them. . . . That's what the proof is." The Commonwealth, in rebuttal argument, made no specific reference at all to the ballistics report or the shell casings, saying only that "[Mr. Gillings] doesn't have to frame [appellant] to cover [his] behavior. [Mr. Gillings] didn't do what [appellant] did. He didn't run away. The evidence doesn't create an elaborate evidence planting." Thus, although appellant was not able to argue a complete lack of ballistics evidence, he was able to argue, without any attempt by the Commonwealth to use the ballistics evidence to refute his argument, that Gillings must have

fired the only gunshots at the scene because he said he fired nine times and nine shell casings were found at the scene.

In sum, we conclude from examining the parties' treatment of the ballistics evidence, in conjunction with the record as a whole, that any error in admitting the certificate was harmless on the facts of this case. The Commonwealth did not argue the specific contents of the ballistics certificate and did not rely heavily on it, and appellant was able to rely on other evidence in the record—Gillings's testimony that he fired nine times—to challenge the Commonwealth's argument that some of the nine shells found at the scene came from the unattended .40 caliber weapon.

The overall strength of the Commonwealth's case also supports the conclusion that the error, if any, was harmless. The three victims, although acquaintances, were interviewed separately at the scene and gave consistent reports about appellant's attempts to rob them at gunpoint. The evidence established that Gillings operated an auto repair shop and that Windley worked for him at that time. At trial, neither of the female victims was impeached with prior convictions, and Gillings was impeached only by a prior conviction for utility theft. The physical evidence at the scene was consistent with the three victims' testimony concerning appellant's taking their property and dropping it as he fled. It was undisputed Gillings remained at the scene and cooperated with the efforts of the police to take custody of his gun and swab his hands for gunshot residue. Appellant, by contrast, attempted to leave the scene and to decline the efforts of police to obtain a DNA swab from him, consenting only after being told the police had a search warrant and that he had no choice. Further, the DNA evidence from the unattended .40 caliber gun at the scene, although not conclusive in establishing appellant had held it, could not exclude him as a contributor to the DNA on it. The results of the gunshot residue tests on appellant's hands showed he had two of the three particles that comprise gunshot primer residue

on his hands and that the particles were in the proper shape to have come from firing a weapon. Appellant's only explanation for why he might have had such residue on his hands was that it could have been transferred to both of his hands by the officers who arrested him, a result the gunshot residue expert testified was difficult to achieve even in controlled laboratory testing. Finally, appellant testified in his own defense and admitted he had numerous prior convictions for felonies of moral turpitude. He claimed Gillings initiated the confrontation because appellant had the name of a rival area of Richmond written on his shoes, but the evidence failed to support appellant's claim. The shoe appellant left at the scene did not bear any notation, "Highland Park" or "HP," and his second shoe was never found.

Based on the strength of the Commonwealth's case as compared to the error, if any, resulting from the admission of the ballistics certificate, we conclude beyond a reasonable doubt that any error was harmless.

## II.

For these reasons, we hold appellant failed to present an adequate record from which we might determine whether the trial court erred in denying appellant's challenge to the racial composition of the jury. We also hold that although the ballistics certificate contained testimonial hearsay, appellant waived his right to confront the preparer of the certificate or, in the alternative, that if appellant did not waive this right, any error in admitting the ballistics certificate was harmless on the facts of this case, in which the certificate was never actually marked as an exhibit or published to the jury. Thus, we affirm appellant's convictions.

Affirmed.