COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, AtLee and Senior Judge Annunziata
Argued by teleconference

UNPUBLISHED

VINAY PENDLI

v.       Record No. 1813-19-4

SUDHEERA GAJULA

MEMORANDUM OPINION[*] BY
JUDGE RICHARD Y. ATLEE, JR.
MAY 19, 2020

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Stephen C. Shannon, Judge

Robert D. Moreton (Moreton & Edrington, P.L.C., on briefs), for
appellant.

Amanda P. DeFede (McIntyre DeFede Law, PLLC, on brief), for
appellee.

Vinay Pendli ("husband")[1] appeals a final divorce decree, and he challenges parts of the

equitable distribution award.  He argues on appeal that the circuit court erred in (1) finding that

husband's post-separation employment earnings transmuted into marital property and classifying

the Scottrade account[2] as marital, (2) finding that wife presented sufficient evidence to establish

a separate property interest in the Walnut Rocker Lane property, (3) awarding wife 50% of

husband's retirement accounts while failing to award husband a share of wife's retirement

accounts, and (4) in granting wife a monetary award because it considered the Scottrade account

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We recognize that "former husband" and "former wife" would be more accurate, but we
use less cumbersome titles in this memorandum opinion for ease of reference.

[2] Scottrade was acquired by TD Ameritrade.  Thus, the Scottrade brokerage account was
referred to as both the Scottrade account and the TD Ameritrade account.  For clarity, we refer to
it as the Scottrade account.

in setting the amount of the award. Sudheera Gajula ("wife") assigns an additional error, arguing that the circuit court erred in excluding husband's monthly rental income of $2,750 from his income for determining his child support obligation. For the reasons that follow, we affirm the circuit court.

## I. BACKGROUND[3]

Husband and wife were married in India on August 17, 2000, and they have two minor children. The parties separated and reconciled at various times throughout their marriage, before separating for the final time on April 14, 2016. Wife filed for divorce on November 28, 2017.

The circuit court conducted a multi-day equitable distribution hearing, during which time the parties presented extensive evidence, on October 23, 24, and 25 of 2018. During the trial period, the parties were also able to come to an agreement and stipulate to descriptions, titles, and valuations of some of the parties' real and personal property. The circuit court resolved the remaining issues.

### A. *Real Property—Walnut Rocker Lane*

At the time of separation, the parties owned a number of different properties. Their primary residence was the Cherry Branch property in Herndon, Virginia. They owned two other properties in Virginia that they rented out: the Ogden Place property and the Walnut Rocker Lane property. They also had property in India. Wife moved to the Walnut Rocker Lane property when the parties separated.

---

[3] "Under settled principles, we view the evidence in the light most favorable to the prevailing party in the trial court, granting to that party the benefit of any reasonable inferences." Wright v. Wright, 61 Va. App. 432, 442 n.2 (2013). Thus, for issues raised by husband, we view the facts in the light most favorable to wife. For the issue raised by wife, we view the facts in the light most favorable to husband.

The parties purchased the Walnut Rocker Lane property in 2011 for $375,000 and titled it in wife's name. A down payment of $27,500 was made towards the purchase price. Husband transferred the funds to wife, and both parties agree that the funds were originally marital.

Wife, however, argues that the funds for the down payment were a gift from husband to wife. She testified that husband waived his rights to the funds and to any future repayment. According to wife, husband did so in a gift letter that was signed and dated by both parties.[4] When asked, husband acknowledged that he understood at the time he transferred the funds he was relinquishing any claim to the funds.

Husband argues that the funds were not a gift. He explained that the funds were intended to be an investment, where the investment in the rental property and any appreciation could be put towards the college education of the parties' children. He also testified that he signed the gift letter relinquishing his claim to the funds to appease the mortgage provider because the title was in wife's name.

### B. *Bank Accounts and Brokerage Accounts*

Following the parties' separation, husband opened a number of bank accounts: a TD bank account, a Capital One account, and a Scottrade brokerage account. He testified that he opened these new accounts to show separation between his post-separation income and the marital funds.

---

[4] The gift letter was shown to the trial judge and both parties testified about the letter, but it was not offered into evidence nor was it otherwise made part of the record. See Rule 5A:7(a)(1) and (3) (the record on appeal constitutes "the documents and exhibits filed or lodged in the office of the clerk of the trial court" and "each exhibit offered in evidence, whether admitted or not, and initialed by the trial judge"). Wife filed a motion for certiorari to this Court to make the letter part of the record on appeal. Because the letter was not part of the record, that motion was denied. See Code § 8.01-675.4 (a writ of certiorari to the clerk of the trial court shall lie "when *part of a record is omitted*" (emphasis added)).

Husband opened the TD bank account and kept it open for only one month. During that month, April 2016, he transferred nearly $70,000 from marital accounts into his new TD account. He testified that he intended to "save" some of the marital funds in it, "which was the wrong intention." He used some of the funds to pay bills. He also transferred $7,000 of that to his new Scottrade brokerage account, and he testified that he transferred $16,000 to a Capital One account before closing the TD account.

Husband also opened a new Capital One checking account to deposit his post-separation employment income. Through the first seven months, from April 25, 2016, to November 7, 2016, husband deposited a mix of employment earnings via direct deposits and deposits from other sources. His deposits from employment earnings during this time totaled approximately $49,800. His deposits from other sources during that time totaled approximately $23,000.

From the time he opened the Capital One account through the date of the last transfer to the Scottrade account, husband deposited approximately $152,000 from employment income. He also made deposits with funds from other sources, though not as many as he made in the first seven months. At the time of valuation, the parties stipulated the account was valued at $58,242.

On April 26, 2016, husband opened a new brokerage account at Scottrade with a check deposit of $7,000. He used that deposit to purchase 500 shares of Marathon Oil stock for $6,415.55. Three weeks later, he transferred an additional $9,000 from the Capital One account to the Scottrade account. He did not make any stock purchases at that time. At trial, he admitted that these initial deposits may have come from marital funds.

In September 2016, husband made two additional transfers of $35,000 and $13,000 from the Capital One account.[5] Husband then made additional stock purchases. After his stock

---

[5] As of September 20, 2016, husband had transferred $57,000 from the Capital One account to the Scottrade account, excluding the initial $7,000 check deposit used to open it. His employment earnings deposited in the Capital One account as of that date were only $38,039.65.

purchases, a $17,924.58 cash balance remained in the account. None of the stocks had been sold at the time of the trial. Husband continued to make transfers and stock purchases. The value of the account at the time of valuation was $247,000.

### C. *Gross Income for Child Support and the Rental Income at Ogden Place*

Child support was not at issue during the equitable distribution hearing. The parties had previously agreed to a calculation of child support pending certain rulings from the circuit court, and the circuit court made the necessary rulings at the equitable distribution hearings. One issue the circuit court had to rule on was whether to include the rental income husband collected from the Ogden Place property in his gross income when calculating child support.

The parties had rented out Ogden Place during their marriage, and husband continued to rent it out after the parties separated. There was some dispute about whether husband rented out the entire house or whether he rented it out by room. Husband testified he was collecting $2,750 per month in rental income. The parties stipulated that the mortgage on the Ogden Place property was $4,006, and the husband testified to the same.

The circuit court concluded that the $2,750 a month in rental income should be included in husband's gross income from February 21, 2017, to the date of the trial, October 25, 2018. After that date, however, the rental income would not be included in husband's gross income, even though he was ultimately awarded the Ogden Place property.

### D. *The Circuit Court's Ruling*

After considering all of the evidence, the circuit court issued its rulings and factual findings on the record on October 25, 2018. It first noted that it had considered all of the statutory factors in Code § 20-107.3(E) in making its ruling.

The circuit court found that husband was not a credible witness. When it came to the use or expenditure of marital funds, the circuit court noted that husband had taken out a home equity

line of credit on the marital residence during one of the parties' separations without accounting for the money, that he moved significant funds out of marital accounts both before and after the separation, and that he collected income from the marital properties without accounting for the funds.

Additionally, the circuit court noted that it had an incomplete picture of the parties' finances. Wife had little understanding of the family finances, and husband's testimony was not credible. Neither party had hired a forensic accountant to assist with the division.

It then classified and distributed the property, attempting to distribute the property to the party in whose name it was titled. All of the properties, with the exception of Walnut Rocker Lane, were classified as marital property. The circuit court found that the Walnut Rocker Lane property was hybrid property. It concluded that wife had a separate interest in the property because the $27,500 down payment was a gift from husband to wife. Upon distribution, husband received the Ogden Place and Cherry Branch properties. Wife received Walnut Rocker Lane and the property in India.

Husband and wife both had retirement accounts. Husband had a Fidelity IRA worth $39,599 and a Merrill IRA worth $14,532. Wife had an IRA worth $97,749 and a deferred annuity worth $41,580. All four accounts were classified as marital. Wife was awarded 50% of each of husband's accounts, but he was not awarded a share in wife's retirement accounts.

The circuit court classified the Capital One account as husband's separate property. But it found the Scottrade brokerage account was marital property because it was opened and funded with marital funds, thus it transmuted into marital property. Husband was awarded the Scottrade account. The circuit court also valued and divided a number of other bank accounts and brokerage accounts between the parties.

Each party received the car titled in his or her name. Husband was also ordered to pay the wife a monetary award of $142,000. The circuit court entered an order of divorce on December 21, 2018, which set out its rulings on the issues of equitable distribution.

## II. ANALYSIS

### A. *Post-Separation Employment and the Scottrade Account*

Husband argues that the circuit court erred in classifying the stock in the Scottrade account as marital property. He contends that he successfully traced the assets in the Scottrade account to his post-separation income, which constitutes his separate income, and therefore, the Scottrade account should have been classified as his separate property.

"[B]ecause classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." Robinson v. Robinson, 46 Va. App. 652, 661 (2005) (*en banc*).

Generally, property acquired by one partner after the date of the last separation "will not be marital property, unless it was obtained, at least in part, with marital funds." Dietz v. Dietz, 17 Va. App. 203, 210 (1993). Husband initially funded the Scottrade account with $7,000 of marital funds, and he admits that the second deposit of $9,000 may have come from marital funds. But he argues that the remaining assets in the Scottrade account are directly traceable to transfers from his Capital One account, which was funded with post-separation income.

The goal of the tracing process is to link an "asset to its primary source, which is either separate property or marital property." von Raab v. von Raab, 26 Va. App. 239, 248 (1997). "The whole point of tracing is to determine whether the owner of separate property has truly kept that property separate." Robbins v. Robbins, 48 Va. App. 466, 477 (2006).

All of the transfers to the Scottrade account originated from husband's Capital One account. Though a significant portion of the funds in the Capital One account originated from

post-separation income, which is separate property, husband continued to deposit funds from other sources. Husband has not demonstrated that those other funds were separate property. Moreover, the circuit court specifically noted that husband had moved significant funds out of marital accounts and generated rental income from marital properties without accounting for those funds. Thus, those other funds were considered marital property, and the Capital One account was a mixture of separate and marital property.

Though separate property does not necessarily become untraceable when mixed with marital property, if the circuit court cannot determine the separate amount, the separate property loses its separate status. Rahbaran v. Rahbaran, 26 Va. App. 195, 208-09 (1997). Proving the source of funds upon initial deposit may be simple enough, but when the funds are withdrawn or transferred, it can be more difficult. See Robbins, 48 Va. App. at 479.

Husband deposited both marital and separate funds into the Capital One account. Funds were regularly transferred from the account, "the balance regularly ebbing and flowing for months." Asgari v. Asgari, 33 Va. App. 393, 403 (2000). The amount of the transfers from the Capital One account to the Scottrade account frequently exceeded the amount of post-separation income in husband's Capital One account at the time of the transfer, especially in the first six months. Therefore, many of the initial transfers to the Scottrade account contained at least some mix of separate and marital property.

Furthermore, when husband purchased the stock in the Scottrade account, the purchases did not always equal the value of the transfer. As a result, there was often a cash balance on the account. For example, husband transferred $9,000 to the account, which he admitted may be marital property, and he did not make any stock purchases at that time. He then made two more transfers from the Capital One account, $35,000 and $13,000, before he made more stock purchases. And though husband argues those transfers were from separate funds, his bank

records indicate he had not deposited sufficient post-separation employment income to make up the entirety of those deposits.

Husband argues that even if the initial transfers were deemed marital, it should not affect the subsequent transfers and stock purchases. But husband left a $17,924.58 cash balance on the account after the initial transfers and stock purchases. It is impossible to say which stocks or combination of stocks were purchased with marital funds and which were purchased with separate funds. Nor can this Court definitively say whether the remaining cash balance was marital, separate, or some combination of the two, and that cash balance was carried forward mixing with husband's subsequent transfers.

The Scottrade account was opened with marital assets and partially funded with marital assets. While husband was able to do some tracing and demonstrate that some of the funds came from post-separation income, he did not satisfactorily demonstrate which stocks, or even which portion of the stocks, were traceable to marital funds and which were traceable to separate funds. Consequently, we affirm the ruling of the circuit court.

B. *Wife's Separate Interest in the Walnut Rocker Lane Property*

Husband argues that wife did not produce sufficient evidence to establish that the down payment for the purchase of the Walnut Rocker Lane property was her separate property, and thus the circuit court erred in awarding her a separate interest in the property.

We have said many times "that on appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present us a sufficient record from which we can determine whether the lower court has erred in the respect complained of." Crawley v. Ford, 43 Va. App. 308, 315 (2004) (quoting Justis v. Young, 202 Va. 631, 632 (1961)). Appellant must include in the record "the evidence introduced in the lower court, or so much thereof as is necessary and sufficient for us to give full consideration to the assignment of error." Lawrence

v. Nelson, 200 Va. 597, 599 (1959).  If the record is insufficient, we will affirm.  Crawley, 43 Va. App. at 315.

Husband failed to provide us with an adequate record because the record did not contain the gift letter, in which wife alleges husband waived his rights to the funds used for the down payment of the property.  The letter was presented to the circuit court but was not in the record before this Court.  Consequently, husband has not presented us an adequate record to consider the issue.

### C.  *Division of the Retirement Accounts*

Husband argues that the circuit court erred by awarding wife a 50% interest in his retirement accounts, while failing to award him any of wife's retirement accounts.

"In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case."  Wright v. Wright, 61 Va. App. 432, 449-50 (2013) (quoting Klein v. Klein, 11 Va. App. 155, 161 (1990)).  Therefore, "[f]ashioning an equitable distribution award lies within the sound disecretion of the trial judge[,] and that award will not be set aside unless it is plainly wrong or without evidence to support it."  Watts v. Watts, 40 Va. App. 685, 702 (2003) (second alteration in original) (quoting Srinivasan v. Srinivasan, 10 Va. App. 728, 732 (1990)).

Husband argues that this case is similar to Donnell v. Donnell, 20 Va. App. 37 (1995), where this Court reversed an equitable distribution award that gave the wife 50% of the husband's pension while he did not receive a share of the wife's pension.  Essentially, husband's argument asks us to look exclusively at the division of the retirement accounts in determining whether the circuit court abused its discretion.

But Code § 20-107.3 "does not require that a spouse be awarded a percentage of all marital properties." Theismann v. Theismann, 22 Va. App. 557, 570, aff'd on reh'g en banc, 23 Va. App. 697 (1996). Consideration of the factors in Code § 20-107.3 "can justify different equities in each of those assets." Id. Therefore, we look to whether the award as a whole is equitable to determine whether there is an abuse of discretion. McDavid v. McDavid, 19 Va. App. 406, 417 (1994).

Even in Donnell, this Court considered the entire equitable distribution award. 20 Va. App. at 42. The wife was awarded 50% of the husband's pension and a $75,000 monetary award, which negated his interest in the marital residence. Id. The husband did not receive a share in the wife's pension, and he was left with $222.50 per month to pay his living expenses, attorney's fees, and court costs. Id. at 43. It was the entire award, not just the retirement account division, that this Court determined was not equitable. Id.

Looking at the entire award here, the circuit court properly considered all of the statutory factors. Husband was awarded significant assets. He received a number of properties in their entirety, including the marital residence and a second property. He also received the entirety of a number of bank and brokerage accounts with significant assets. In fact, the total value of husband's share of the marital assets exceeds the total value of wife's share of the marital assets. Thus, considering the total equitable division award, the circuit court did not abuse its discretion in dividing the retirement accounts.

### D. *Wife's Monetary Award*

Husband's contention that the circuit court erred in granting a monetary award is premised on his argument that the circuit court erred in classifying the Scottrade account as marital property. Because we concluded that the circuit court did not err in finding that the

separate property in the Scottrade account was not sufficiently traceable, we need not address this assignment of error.

### E. *Husband's Monthly Rental Income from Ogden Place*

Wife argues that the circuit court erred in excluding husband's monthly rental income of $2,750 from his gross income for purposes of calculating ongoing child support, though it properly included it in his gross income for support owed prior to the date of the trial.

"Decisions concerning [child] support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Calvert v. Calvert, 18 Va. App. 781, 784 (1994).

When calculating a support obligation, Code § 20-108.2(C) defines "gross income" as "all income from all sources, and shall include, but not be limited to . . . rental income . . . ." Subsection (C) also provides that "[g]ross income shall be subject to deduction of reasonable business expenses for persons with income from self-employment, a partnership, or a closely held business." Code § 20-108.2(C).

Rental income is indisputably considered gross income under Code § 20-108.2(C). Wife concedes that husband would be entitled to a deduction for reasonable business expenses, but she argues that husband failed to produce evidence to support such expenses.[6] The parties, however, agreed to a number of stipulations for purposes of the equitable distribution hearing. The parties stipulated that the mortgage amount for the Ogden Place property was $4,006. Husband also provided testimony about the mortgage costs. Based on the evidence in the record, the evidence is sufficient for the circuit court to have concluded that there was no net rental income and

---

[6] Wife also argues that husband should be precluded from claiming any reasonable business expenses because he had not lawfully reported his rental income on his tax returns. The circuit court appears to have wisely exercised its discretion, including the $2,750 rental income in husband's gross income up to October 25, 2018, but excluding it from his gross income after October 25, 2018, the date of the equitable distribution hearing.

therefore it did not err by excluding the rental income from his gross income for purposes of calculating child support.

## III.  CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court.

<u>Affirmed.</u>